*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0146P (6th Cir.)
File Name: 03a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EDITH LEE-LIPSTREU; EDWIN LIPSTREU,

Plaintiffs-Appellants,

v.

CHUBB GROUP OF INSURANCE COMPANIES; FEDERAL INSURANCE COMPANY,

Defendants-Appellees.

No. 01-3868

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-03238—Paul R. Matia, Chief District Judge.

Argued: December 3, 2002

Decided and Filed: May 19, 2003

Before: RYAN, CLAY, and GIBBONS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Paul W. Flowers, LAW OFFICE OF PAUL W. FLOWERS, Cleveland, Ohio, for Appellants and Amici Curiae. Daniel F. Gourash, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellees. **ON BRIEF:**

W. Craig Bashein, BASHEIN & BASHEIN CO., Cleveland, Ohio, for Appellants. Daniel F. Gourash, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellees. Paul W. Flowers, LAW OFFICE OF PAUL W. FLOWERS, Cleveland, Ohio, Anne M. Sferra, Robert H. Katz, Kurtis A. Tunnell, BRICKER & ECKLER, Columbus, Ohio, for Amici Curiae.

———————————

**OPINION**

———————————

RYAN, Circuit Judge. The plaintiffs, Edith Lee-Lipstreu and her husband, Edwin Lipstreu, appeal the district court's grant of summary judgment in favor of the defendant, Federal Insurance Company. They claim the defendant is obligated to pay them underinsured motorist benefits pursuant to a commercial general liability policy issued by the defendant to Edith Lee-Lipstreu's employer, National City Corporation. We conclude that under Ohio law, the policy did not provide automobile liability insurance coverage, and did not, therefore, provide underinsured motorist coverage for the plaintiffs. We affirm the judgment of the district court dismissing the plaintiffs' claims.

**I.**

The action before this court is known in Ohio as a *Scott-Pontzer* claim. In *Scott-Pontzer v. Liberty Mut. Fire & Ins. Co.*, 710 N.E.2d 1116 (Ohio 1999), the Ohio Supreme Court held that employees may sue their employer's insurance carrier to recover underinsured motorist benefits. *Id.* at 1119-20. The court reasoned that an insurance policy issued to a corporation provides coverage for its employees if the term "you" in the policy is ambiguous. *Id.* at 1119. The parties do not dispute that at the time Lee-Lipstreu was injured, she was an employee of National City and that pursuant to *Scott-Pontzer*, she was an "insured" under the Federal policy. *See id.* at 1120.

An increasing number of *Scott-Pontzer* claims such as this one have either been filed in the federal district courts of Ohio or removed there by defendants. It has come to our attention that the district courts disagree on whether the federal courts have subject matter jurisdiction over these cases. We find it appropriate, then, to examine the jurisdictional issue, not only to be certain of our own jurisdiction, but also to resolve the disagreement among the district courts. We are reminded that "[a]n appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934).

The disagreement centers on whether *Scott-Pontzer* claims are "direct actions." Under the federal diversity statute

> in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business[.]

28 U.S.C. § 1332(c)(1). On one side of the split are the courts holding that *Scott-Pontzer* claims are direct actions. These courts reason that when an employee sues her employer's insurance carrier under *Scott-Pontzer*, the direct action provision applies because the employer is not joined as a party-defendant. Under the statute, the insurer adopts the citizenship of the insured, which is the employer. Therefore, while the plaintiff and her employer are usually citizens of the same state, when the insurance carrier adopts the citizenship of the insured employer, diversity between the plaintiff and the defendant is usually defeated, and the result is a lack of federal jurisdiction.

This application of the direct action provision of § 1332(c)(1) ignores a fundamental component of a *Scott-*

*Pontzer* claim—that the entire suit rests on the conclusion that the *employee is the insured* under the policy. Thus, in a *Scott-Pontzer* claim, the insured sues her own insurance carrier. The insured obviously is not joined as a party-defendant because the insured is the plaintiff. Applying the direct action provision to a dispute solely between an insured and her own insurance company would result in an absurdity—federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state. We recognize that the direct action provision applies in certain situations involving insureds and insurers, but we conclude that it does not apply here. This result comports with the conclusion reached by our sister circuits that when an injured party sues her own uninsured motorist carrier, it is not a direct action. *See, e.g., McGlinchey v. Hartford Accident & Indem. Co.*, 866 F.2d 651, 652-53 (3d Cir. 1989); *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 847 (10th Cir. 1988). We find it unnecessary to elaborate further on the meaning of "direct action" because regardless of the precise definition, the term cannot possibly include *Scott-Pontzer* claims.

A federal court must consider the regular diversity principles in 28 U.S.C. § 1332 to determine whether it has subject matter jurisdiction over a *Scott-Pontzer* claim. Here, federal jurisdiction exists because the plaintiffs are citizens of Ohio, and Federal is an Indiana corporation with its principal place of business in New Jersey. Diversity of citizenship is present and the amount in controversy exceeds $75,000.

## II.

We review *de novo* a district court's grant of summary judgment. *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 246 (6th Cir. 2000). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). In reviewing the district court's grant of summary judgment, we draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

The parties stipulate to the following facts:

1. Federal Insurance Company issued the Financial Institutions General Liability Insurance Policy No. 7323-10-65 to National City Corporation with limits of liability of $1,000,000 for the period of May 1, 1997, until May 1, 1998.

2. On December 20, 1997, Edith Lee-Lipstreu was an employee of National City. National City never employed Edwin Lipstreu.

3. On December 20, 1997, Edith Lee-Lipstreu was involved in an automobile accident with Ronnie A. Nubbie. The accident occurred on Memory Lane in Olmsted Township and did not involve the parking of an automobile. Edith Lee-Lipstreu was not acting in the scope of her employment when the accident occurred.

4. On March 10, 1999, the plaintiffs sued Nubbie; Edith Lee-Lipstreu's health insurer, Medical Mutual of Ohio; and Nationwide Insurance Company. In the complaint, Edith Lee-Lipstreu alleged that she suffered injuries to her left hip and knee from the accident, and Edwin Lipstreu alleged loss of consortium.

5. On January 11, 2000, the plaintiffs settled with Nubbie for $25,000, which was the limit of liability of the automobile policy Nationwide had issued to Nubbie. In exchange, the plaintiffs dismissed their

claims against Nubbie and released him from all liability in connection with the accident.

6. On January 18, 2000, the plaintiffs also settled with Nationwide. Before the accident, Nationwide had issued the plaintiffs an automobile liability policy providing uninsured and underinsured coverage, with a $250,000 limit of liability per accident. Nationwide paid $197,178.82 to the plaintiffs and $17,821.18 to Medical Mutual. In exchange, the plaintiffs released their claims against Nationwide.

The general liability policy issued by the defendant to National City covered certain types of bodily injury, property damage, personal injury, and advertising injury. Covered injuries were subject to exclusions. The policy contained the following provision:

EXCLUSIONS

This insurance does *not* apply to:

. . . .

AIRCRAFT-WATERCRAFT-AUTO
bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any:
1. aircraft;
2. watercraft; or
3. *auto*
which any insured owns, operates, rents, or borrows. . . .

BUT
this *exclusion* does *not* apply to:
. . . .
3. liability of any insured *arising out of the parking of an auto on or next to your premises*; provided such auto is not owned by, rented or loaned to such insured[.]

(Emphasis added.)

### IV.

In determining whether, under Ohio law, the plaintiffs have the underinsured motorist coverage they claim, we are guided by the rule that "the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." *Ross v. Farmers Ins. Group of Cos.*, 695 N.E.2d 732, 738 (Ohio 1998). When National City and the defendant entered the contract, Ohio law stated:

> No *automobile liability or motor vehicle liability policy of insurance* . . . shall be delivered or issued for delivery in this state . . . *unless both of the following coverages are provided* to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
>
> (1) Uninsured motorist coverage . . . .
>
> . . . .
>
> (2) Underinsured motorist coverage . . . .

Ohio Rev. Code § 3937.18(A) (1997) (emphasis added). And if such a policy does not explicitly describe such coverage, it is implied. *Scott-Pontzer*, 710 N.E.2d at 1120. The statute has since been amended and no longer requires uninsured and underinsured motorist coverage to be implied as a matter of law. Ohio Rev. Code § 3937.18(A) (2003). However, for purposes of this appeal, *if* the Federal Insurance Company policy contained automobile liability insurance, then it provided underinsured coverage.

The plaintiffs argue that the policy was an automobile liability policy and that, therefore, uninsured and underinsured coverage was implied in the policy under since-amended section 3937.18(A). They claim that, while the language of the policy above quoted initially excludes coverage for

routine automobile accidents, the "BUT" provision restores automobile coverage to a limited extent; it covers the parking of an auto on or next to an insured's premises. According to the plaintiffs, this "parking attendant" provision extends liability coverage to them. The plaintiffs rely primarily on *Selander v. Erie Ins. Group*, 709 N.E.2d 1161 (Ohio 1999), to support their position. They argue that under *Selander*, any "limited or incidental" automobile insurance creates uninsured and underinsured coverage in the policy.

The defendant points out that the policy specifically *excludes* coverage for automobiles and argues that the plaintiffs interpret *Selander* incorrectly. According to the defendant, the policy in *Selander* contained automobile coverage because it covered a class of automobiles used and operated on public roads. The defendant claims that this case is more like *Davidson v. Motorists Mut. Ins. Co.*, 744 N.E.2d 713 (Ohio 2001). The defendant argues that this policy, like the homeowner's policy in *Davidson*, is not an automobile liability policy containing uninsured and underinsured coverage. We agree.

Essentially, the parties dispute whether *Selander* or *Davidson* controls the outcome here. In *Selander*, the Ohio Supreme Court held that a general liability policy which provided coverage for "hired" or "non-owned" automobiles contained automobile liability insurance within the meaning of section 3937.18(A). 709 N.E.2d at 1163-65. In *Davidson*, the Ohio Supreme Court held that a homeowner's policy which provided coverage for "certain motorized vehicles" did not contain automobile liability insurance within the meaning of section 3937.18(A). 744 N.E.2d at 718-19.

When faced with a provision *identical* to the one here, the Ohio Court of Appeals followed the reasoning of *Davidson*, rather than *Selander*. *Szekeres v. State Farm Fire & Cas. Co.*, No. 02CA00004, 2002 WL 31439821, at *4 (Ohio Ct. App. Oct. 31, 2002). In analyzing the general liability policy in

*Szekeres*, the court relied on the following passage from *Davidson*:

"Moreover, we never intended *Selander* to be used to convert every homeowner's policy into a motor vehicle liability policy whenever any incidental coverage is afforded for some specified type of motorized vehicle. Instead, *Selander* stands only for the proposition that UM/UIM [(uninsured/underinsured)] coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration."

*Id.* at *3 (quoting *Davidson*, 744 N.E.2d at 717). Based on this language, the court in *Szekeres* found that a "parking attendant" or "valet parking" exception did not create automobile liability insurance. The court reasoned:

Per *Davidson*, such a provision is not truly a motor vehicle provision but a property damage provision. The provision does not pertain to any motor vehicle operation, but to coverage of the automobile body itself. We find to magnify this provision to the point that it would transform a general liability policy into a motor vehicle policy is to step beyond the pale.

*Szekeres*, 2002 WL 31439821, at *4. We agree. The provision here, with its identical language, is not a motor vehicle provision.

The plaintiffs invite our attention to two cases in which the Ohio Court of Appeals, applying *Selander*, found that "parking attendant" provisions created automobile liability insurance. *See Cox v. State Farm Fire & Cas. Co.*, No. 2001CA00117, 2002 WL 1310424 (Ohio Ct. App. June 10, 2002); *Burkhart v. CNA Ins. Co.*, No. 2001CA00265, 2002 WL 316224 (Ohio Ct. App. Feb. 25, 2002). *Szekeres* was decided after both *Burkhart* and *Cox*, and was authored by the same judge who authored *Cox*. In *Szekeres*, Judge Farmer

noted the "direct conflict" between *Cox* and *Szekeres* and, accordingly, "concede[d] error in the *Cox* decision." *Szekeres*, 2002 WL 31439821, at *4 n.3; *see also Jett v. State Auto. Mut. Ins. Co.*, No. 2002CA00183, 2002 WL 31883549, at *4-*5 (Ohio Ct. App. Dec. 23, 2002). Besides the deference we owe to the Ohio Court of Appeals on the issue before us, we think the reasoning in *Szekeres* is sound and, applying *Davidson*, we conclude that the "parking attendant" provision in the Federal policy did not create automobile liability coverage.

**V.**

To summarize, the policy issued by Federal was not an automobile liability policy within the meaning of section 3937.18(A), and therefore, did not contain uninsured and underinsured motorist coverage. We need not address whether the policy covered Edwin Lipstreu, or whether the policy contained notification and subrogation requirements, because the plaintiffs cannot recover under the policy. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.