*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0249P (6th Cir.)
File Name: 03a0249p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————

JAMES HINDALL,
    *Plaintiff-Appellant,*

    *v.*

WINTERTHUR
INTERNATIONAL and
TRAVELERS INDEMNITY CO.
OF ILLINOIS,
    *Defendants-Appellees.*

No. 01-3414

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 00-07429—James G. Carr, District Judge.

Argued: June 12, 2003

Decided and Filed: July 25, 2003

Before: KEITH, MOORE, and GIBBONS, Circuit Judges.

———————

**COUNSEL**

**ARGUED:** Matthew C. Huffman, GOODING, HUFFMAN, KELLEY & BECKER, Lima, Ohio, for Appellant. Laura M. A. Faust, ROETZEL & ANDRESS, Akron, Ohio, Henry A.

Hentemann, DAVIS & YOUNG, Cleveland, Ohio, for Appellees. **ON BRIEF:** Matthew C. Huffman, GOODING, HUFFMAN, KELLEY & BECKER, Lima, Ohio, for Appellant. Laura M. A. Faust, ROETZEL & ANDRESS, Akron, Ohio, Henry A. Hentemann, DAVIS & YOUNG, Cleveland, Ohio, for Appellees.

———————

**OPINION**

———————

KAREN NELSON MOORE, Circuit Judge. The plaintiff James Hindall ("Hindall") appeals the district court's grant of summary judgment to Winterthur International ("Winterthur") and Travelers Indemnity Co. of Illinois ("Travelers") as well as the district court's denial of his summary judgment motion. Hindall was injured in a motor vehicle accident caused by the negligence of an underinsured driver. At the time of the accident, Hindall was an employee of Philips Display, a subsidiary of Philips Electronics North America, which had contracted for insurance with both Winterthur and Travelers. Hindall claims that he is an insured under these policies and is entitled to uninsured/underinsured ("UM/UIM") coverage under both of them.

The district court premised its grant of summary judgment to the defendants on its belief that Philips Display, Hindall's employer, was validly offered and had validly rejected UM/UIM coverage, and that the Winterthur and Travelers policies therefore did not cover the injuries Hindall sustained. In light of the Ohio Supreme Court's recent decision in *Kemper v. Michigan Millers Mutual Insurance Co.*, 781 N.E.2d 196 (Ohio 2002), however, we are bound to hold that the offer and rejection of UM/UIM coverage here were invalid, and that UM/UIM coverage therefore arises by operation of law under both the Travelers and Winterthur policies. We therefore **REVERSE** the district court's grant of summary judgment to Winterthur and Travelers, **VACATE**

the district court's denial of summary judgment to Hindall, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

On May 1, 1999, Hindall was involved in a motor vehicle accident in Findlay, Ohio, when a car driven by Mandy Klinger struck Hindall's motorcycle. Although Klinger's insurance company paid Hindall the limit of Klinger's liability policy, Hindall's damages exceeded the amount paid.

At the time of the accident, Hindall was an employee of Philips Display Components, Inc. ("Philips Display"), in Ottawa, Ohio, a subsidiary of Philips Electronics North America ("Philips Electronics"). Philips Electronics, at that time, was the named insured on two insurance policies.

The first of the policies was issued by Travelers. The Travelers policy provided primary commercial automobile liability coverage in the amount of $2 million per accident or loss. The policy purported to cover subsidiaries of Philips Electronics, including Philips Display. The Travelers policy was agreed upon for Philips Electronics by John Esile, Philips Electronics's Risk Manager. On December 31, 1998, Esile filled out and signed a UM/UIM coverage rejection/selection form associated with the Travelers policy. The form briefly summarized the nature of UM/UIM insurance, and then provided a series of boxes, which allowed Esile either to accept or to reject UM/UIM coverage. Esile checked the box rejecting UM/UIM coverage. Esile was given the authority to waive UM/UIM coverage by Thomas Hassett, Philips Electronics's Director of Risk Management. However, while the form provided a brief description of UM/UIM coverage, it did not specify the premiums for UM/UIM coverage. Moreover, although the form listed Philips Electronics as an insured, it did not mention Philips Display. Lastly, there is no evidence in the record that Esile and Hassett (both officers of Philips Electronics) were given written authority by anyone

within Philips Display to reject UM/UIM coverage on Philip Display's behalf.

The second policy considered here is the commercial umbrella policy issued by Winterthur to Philips Electronics. The Winterthur policy, as an excess policy, provides an additional layer of insurance for occurrences resulting in losses exceeding the coverage limits of the Travelers policy. The Winterthur policy was also in effect at the time of Hindall's accident and had liability limits of $12 million. The only discussion of UM/UIM coverage in the policy is a terse statement that UM/UIM coverage is provided only to the extent it is provided in the Travelers policy. There is no evidence of a written offer or rejection of UM/UIM coverage with regard to the Winterthur policy. This is consistent with the remarks of John Esile, who testified in his deposition that he was not responsible for purchasing or rejecting umbrella or excess insurance, and that he was unaware of anyone specifically rejecting UM/UIM coverage under the Winterthur policy.

On July 17, 2000, Hindall filed a complaint in the United States District Court for the Northern District of Ohio seeking UM/UIM coverage under the Travelers and Winterthur policies. All of the parties moved for summary judgment, and the district court issued an opinion denying Hindall's motion for summary judgment and granting Winterthur's and Travelers's motions. The district court concluded that Esile's written rejection of UM/UIM coverage with regard to the Travelers policy was valid and sufficed to show that there was a valid offer of UM/UIM coverage as well. The district court therefore held that UM/UIM coverage did not arise by operation of law under the Travelers policy. Since the Winterthur policy only provided coverage for liabilities covered by the Travelers policy, the district court concluded that the Winterthur Policy also provided no coverage for Hindall. Hindall filed a timely notice of appeal.

## II. ANALYSIS

### A.  Jurisdiction

The district court had jurisdiction over this diversity case pursuant to 28 U.S.C. § 1332, because Hindall's citizenship is diverse from the insurance companies' citizenships. *See Lee-Lipstreu v. Chubb Group of Ins. Cos*., 329 F.3d 898, 899-900 (6th Cir. 2003) (holding that federal courts have jurisdiction over actions by an insured against his or her own insurance company if the two are of diverse citizenship because such actions are not direct actions within the meaning of 28 U.S.C. § 1332(c)(1)).  We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291.

### B.  Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097 (6th Cir. 1994).  A district court's decision to deny a party's motion for summary judgment is usually considered an interlocutory order and thus not appealable, *see Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002), *cert. denied*, 123 S. Ct. 866 (2003), but "when the appeal from a denial of summary judgment is presented together with an appeal from a grant of summary judgment, we have jurisdiction to review the appropriateness of the district court's denial," *see Thomas v. United States*, 166 F.3d 825, 828 (6th Cir. 1999).  We review a district court's denial of summary judgment based purely on legal grounds de novo. *Id.*  Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### C.  The Travelers Policy

Former Ohio Revised Code § 3937.18 required insurance companies, when they made an offer of motor vehicle liability insurance, also to offer UM/UIM coverage in an amount

equal to the liability limits of the policy.[1]  If an insurance company did not offer UM/UIM coverage in such an amount, UM/UIM coverage was deemed to arise by operation of law in the full amount of the policy limits.  *Gyori v. Johnston Coca-Cola Bottling Group, Inc*., 669 N.E.2d 824, 827 (Ohio 1996).  Ohio courts stressed that "[t]he purpose of the requirement is to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated," and therefore held that the "statute should be construed liberally in order to effectuate [this] legislative purpose." *Id.* at 826 (quotations omitted).  As a result, "rejection of UM coverage [had to] be made expressly and knowingly," and it was the "insurance companies [that bore] the burden of [this] showing." *Id.* (quotation omitted).

In order to minimize the problems of proof in these UM/UIM cases, the Ohio Supreme Court in *Gyori* interpreted the statute (as it was written before it was amended in 1997 by H.B. 261) to require both a written offer of UM/UIM coverage and a written rejection of that offer. *Id.* at 827.  In a later decision (again interpreting the pre-H.B. 261 statute), the Ohio Supreme Court expanded upon those requirements.

---

[1] The Ohio legislature has subsequently amended the UM/UIM law to eliminate any requirement that insurers offer UM/UIM coverage. *See* OHIO REV. CODE ANN. § 3937.18(A) (2002).  The uncodified law accompanying this revision explains that a major purpose of the amendment was to "[e]liminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both . . . being implied as a matter of law in any insurance policy." *Id.*

However, "[f]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." *Ross v. Farmers Ins. Group of Cos.*, 695 N.E.2d 732, 732 syllabus para. 1 (Ohio 1998).  As the relevant policies in this case were agreed upon (and became effective) on December 31, 1998, the 2002 amendments to this statute do not apply — although H.B. 261, which amended the statute in 1997, does. Its impact will be discussed later.

*See Linko v. Indem. Ins. Co. of N. Am.*, 739 N.E.2d 338 (Ohio 2000). In *Linko*, the court explained that the written offer of UM/UIM coverage had to include "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." *Id.* at 342. The *Linko* court also made it clear that a parent corporation could only reject insurance on behalf of its separately incorporated subsidiary corporations if certain safeguards were met. The *Linko* court required that "[s]eparately incorporated named insureds must each be listed in a rejection form" and that "[o]nly with a subsidiary's written authorization may a parent corporation reject UM/UIM coverage on the subsidiary's behalf." *Id.* at 341. The *Linko* court also made clear that extrinsic evidence could not be used to show that there was a valid offer or a valid rejection of UM/UIM coverage. Instead, "the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made . . . . [T]he issue of whether coverage was offered and rejected should be apparent from the contract itself." *Id*. at 343. All of these conditions applied both to primary insurance policies as well as to umbrella policies. *Gyori*, 669 N.E.2d at 826 ("The mandates of R.C. 3937.18 apply to providers of excess coverage as well as providers of primary liability coverage.").

In 1997, the Ohio legislature passed H.B. 261, which made several changes to § 3937.18. Although it was initially uncertain how the passage of H.B. 261 would affect the *Linko* requirements, it is now clear that the *Linko* requirements still apply to offers and rejections of UM/UIM coverage even after H.B. 261. *See Kemper v. Michigan Millers Mut. Ins. Co.*, 781 N.E.2d 196 (Ohio 2002); *see also Roberts v. Universal Underwriters Ins. Co.*, __ F.3d __, 2003 WL 21503211, at *5 (6th Cir. July 2, 2003) (explaining that *Kemper* makes it "unmistakably clear that the *Linko* requirements still apply to policies after H.B. 261 went into effect"). With this point established, Travelers has no defense to Hindall's claim — as

there is simply no question here that the offer in this case does not comport with the *Linko* requirements.[2]

The most apparent violation of *Linko* in this case is that the written offer contains no discussion of the price of UM/UIM premiums, which was something *Linko* explicitly required. *Linko*, 739 N.E.2d at 342 ("We agree with the following required elements for written offers imposed by Ohio appellate courts: a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits."). The lack of premium information makes the written offer in this case deficient in exactly the same respect as the written offer in *Roberts*, which was held legally inadequate because it similarly failed to state the required premium information. Under *Roberts*, we must hold the written offer of UM/UIM coverage in this case to be fatally defective. *See Roberts*, __ F.3d at __, 2003 WL 21503211, at *5 (pointing out that this "holding is consistent with numerous Ohio intermediate appellate court decisions that have held offers invalid under *Kemper* solely for not containing premium information"). We therefore conclude that Travelers's offer of UM/UIM coverage was not validly made, and therefore was not validly rejected.[3] *See Gyori*, 669

---

[2]Travelers has never disputed this key point. Throughout this litigation, Travelers's only argument has been that the *Linko* requirements no longer apply after H.B. 261; it has never argued that the *Linko* requirements were satisfied under the facts of this case.

[3]There are two other violations of *Linko* here, although the failure of Travelers to put the premiums in writing is sufficient to render Travelers's offer of UM/UIM coverage invalid. First, *Linko* requires that "[s]eparately incorporated named insureds must each be listed in a rejection form to satisfy the offer requirement of R.C. 3937.18." *Linko v. Indem. Ins. Co. of N. Am.*, 739 N.E.2d 338, 341 (Ohio 2000). The *Linko* court later explained that "[a]n offer to the parent does not *per se* constitute an offer to the subsidiary. Without the name of the entity on the selection form, no offer of UM/UIM coverage has been made to that entity." *Id.* at 342. Here, the rejection form does not list Philips Display; it only names Philips Electronics. Although Travelers argues that Philips

N.E.2d at 827 & n.3 (noting that there must be a valid offer before there can be an express, knowing rejection). UM/UIM coverage therefore arises by operation of law in the amount of the policy limits. *Id.* at 826 (noting that there is "only one way to avoid the requirement that UM coverage be provided — an express, knowing rejection of UM coverage by the customer" preceded by a valid offer). We therefore reverse the grant of summary judgment to Travelers and vacate the district court's denial of Hindall's motion for summary judgment against Travelers.

## D. Winterthur Policy

Having concluded that the Travelers policy was defective under *Linko* and *Kemper*, we now turn to the Winterthur

---

Display was clearly incorporated into the agreement via part of a separate endorsement, *Linko* plainly requires that the separately incorporated named insureds each be listed *on the selection form itself*, not that they just appear within the offer. Our conclusion that the offer and rejection is therefore invalid under *Linko* is consistent with a post-*Kemper* Ohio intermediate court that considered this same issue. *See Inlow v. Davis*, No. CA2002-08-071, 2003 WL 21373154, at *4 (Ohio Ct. App.–12th Dist. June 16, 2003) (holding that because "[t]he written rejection simply fails to name Bigg's [the subsidiary] as an insured," it is therefore defective under *Kemper* because "a rejection of UM/UIM coverage on behalf of Bigg's cannot be inferred from Supervalu's [the parent company's] rejection").

Second, *Linko* "require[d] that a subsidiary's authorization to a parent corporation to waive UM/UIM coverage benefits on its behalf must be in writing and must be incorporated into the contract." *Linko*, 739 N.E.2d at 343; *see also id.* at 341 ("Only with a subsidiary's written authorization may a parent corporation reject UM/UIM coverage on the subsidiary's behalf."). This requirement also has not been satisfied. There is no evidence in the record that anyone at Philips Display authorized the waiver of UM/UIM coverage in writing. In fact, according to John Esile, the risk manager of Philips Electronics, no one at Philips Display would even have known about the offer of UM/UIM coverage, as it was Philips Electronics that was responsible for procuring insurance. This is another indisputable violation of *Linko*.

---

policy and find it similarly defective.[4] As an umbrella policy, the Winterthur policy is subject to the same *Gyori* and *Linko* requirements as a primary insurance policy. *See Gyori*, 669 N.E.2d at 826 ("The mandates of R.C. 3937.18 apply to providers of excess coverage as well as providers of primary liability coverage."); *see also Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 710 N.E.2d 1116, 1120 (Ohio 1999) (noting the Supreme Court holdings requiring that "excess liability insurance must comport with R.C. 3937.18 and thus uninsured (and underinsured) motorist coverage must be tendered" and that "failure by the insurer to offer such coverage results in the provision of such coverage by operation of law").

The Witherthur policy is clearly defective as regards UM/UIM coverage under *Linko* and *Kemper*. John Esile testified in deposition that there was never any written rejection of UM/UIM coverage pursuant to the Winterthur policy, and the record similarly contains no evidence of a written rejection. *See Linko*, 739 N.E.2d at 343 ("By requiring an offer and rejection to be in writing, this court impliedly held in *Gyori* that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not.").

Winterthur's only defense was that its policy, as an umbrella "follow-form" policy, excluded coverage whenever the underlying policy also excluded coverage. As a result, Winterthur's brief was devoted to arguing that the Travelers

---

[4]The district court granted summary judgment to Winterthur because the Winterthur policy specified that it only provided coverage when the underlying policy also provided coverage. Since there was no liability under the Travelers policy, the district court concluded that there could be no liability under the Winterthur policy. We, however, have concluded that UM/UIM coverage did arise by operation of law under the Travelers policy, and therefore cannot affirm the grant of summary judgment to Winterthur on that basis.

policy did not provide UM/UIM coverage and that Winterthur's "follow-form" exclusion (which stated that Winterthur would only provide coverage when the underlying policy also provided coverage) was valid. Having determined, however, that implied UM/UIM coverage was created under the Travelers policy, we believe that it is inescapable that coverage should exist under the Winterthur policy as well to the extent that Hindall's damages exceed the Travelers policy's limits.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment to the defendants on the ground that the Travelers and Winterthur policies did not contain UM/UIM coverage, as we hold that both of these policies did in fact provide UM/UIM coverage as a matter of law. For the same reason, we **VACATE** the district court's denial of summary judgment to Hindall. We **REMAND** the case to the district court for further proceedings consistent with this opinion.