*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0250P (6th Cir.)
File Name: 03a0250p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES CLARK and DONNA
CLARK,
    *Plaintiffs-Appellants,*

    *v.*

CHUBB GROUP OF INSURANCE
COS. and FEDERAL
INSURANCE CO.,
    *Defendants-Appellees.*

No. 01-4178

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-02989—Donald C. Nugent, District Judge.

Argued: March 11, 2003

Decided and Filed: July 25, 2003

Before: MOORE and CLAY, Circuit Judges; LAWSON,
District Judge.[*]

---

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

## COUNSEL

**ARGUED:** Paul W. Flowers, LAW OFFICE OF PAUL W. FLOWERS, Cleveland, Ohio, for Appellants. Robert D. Anderle, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellees. **ON BRIEF:** Paul W. Flowers, LAW OFFICE OF PAUL W. FLOWERS, Cleveland, Ohio, W. Craig Bashein, LAW OFFICES OF R. WILLIAM BASHEIN, Cleveland, Ohio, for Appellants. Robert D. Anderle, Daniel F. Gourash, Howard G. Strain, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellees.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. The plaintiffs, James and Donna Clark, appeal the district court's grant of summary judgment to the defendants Federal Insurance Company and Chubb Group of Insurance Companies (collectively "Federal") and the district court's denial of their motion for summary judgment. The Clarks allege that the injuries James Clark sustained in an automobile accident were covered under three policies of insurance issued by Federal to Clark's employer, the Clark Rubber Company ("Clark Rubber"). On appeal, the Clarks claim that the district court erred in holding that they did not comply with the prompt-notice and subrogation provisions in the insurance policies, and erred in holding that one of the policies was not a motor vehicle liability policy at all.

Based on the facts of the case and for the reasons set forth below, we **REVERSE** the district court's judgment and **REMAND** this case in light of the Ohio Supreme Court's

recent decision in *Ferrando v. Auto-Owners Mutual Insurance Co.*, 781 N.E.2d 927 (Ohio 2002).

## I. BACKGROUND

The parties have stipulated to the facts of this case. On March 9, 1994, James Clark was involved in an automobile accident with David Sholtis. James Clark was an employee of Clark Rubber, which was insured at the time under three different policies with Federal. First, Clark Rubber was insured under a Business Auto policy (the "Auto" policy). The Auto policy explicitly provided uninsured and under-insured motorist ("UM/UIM") insurance and had a UM/UIM per accident limit of $500,000 and an aggregate limit of $1,000,000. Second, Clark Rubber was insured under a Comprehensive General Liability policy (the "CGL" policy) with limits of $1,000,000. Lastly, Clark Rubber carried a Commercial Excess Liability policy (the "Excess" policy) with limits of $1,000,000. Each of these policies was issued for the period of March 23, 1993 to March 23, 1994 and was in effect at the time of the accident.

The Clarks settled with Sholtis and his automobile insurer, the Personal Service Insurance Company ("Personal") on October 28, 1994, for the limit of their liability policy, $25,000. Clark received $12,500 and Donna Clark and their two children received $12,500. It is undisputed that in exchange for the proceeds of the settlement, the plaintiffs released both Sholtis and Personal from all liability in connection with this accident. James Clark has also recovered $100,000 from his own automobile insurance policy and $100,000 from his homeowner's policy, both issued by Prudential. The Clarks admit that Federal did not receive notice of the accident or the Clarks' claim until March 3, 2000. Each of the Federal policies contained clauses that required insureds to notify Federal in case of an accident and that gave Federal subrogation rights, namely, the rights to

pursue claims on behalf of the injured parties whom it insures.

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction over this diversity case pursuant to 28 U.S.C. § 1332, because the Clarks are citizens of Ohio and Federal is an Indiana corporation that has its principal place of business in New Jersey. *See Lee-Lipstreu v. Chubb Group of Ins. Cos.*, 329 F.3d 898, 899-900 (6th Cir. 2003) (holding that federal courts have jurisdiction over actions by an insured against his or her own insurance company if the two are of diverse citizenship because such actions are not direct actions within the meaning of 28 U.S.C. § 1332(c)(1)). We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291.

### B. Standard of Review

The question in this case is whether the district court properly granted summary judgment to Federal and properly denied the Clarks' summary judgment motion. "This court reviews a district court's grant of summary judgment de novo." *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 933 (6th Cir. 2000). Although the district court's denial of a motion for summary judgment is usually treated as a nonappealable interlocutory order, when "an appeal from a denial of summary judgment is presented in tandem with a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 235 (6th Cir. 2003) (quotation omitted). The district court's denial of summary judgment based on purely legal grounds is reviewed de novo. *Id.* at 235-36. Summary judgment can be granted only when, taking all justifiable inferences in the nonmoving party's favor, there is still no genuine issue of material fact

and the moving party is entitled to a judgment as a matter of law. *Plant*, 212 F.3d at 934.

## C. An Overview of the Plaintiffs' Claims

There are three policies at issue: the Auto policy, the CGL policy, and the Excess policy. Although James Clark is not listed explicitly as an insured under any of the policies, Federal does not dispute that the Clarks are insureds pursuant to the Ohio Supreme Court's decision in *Scott-Pontzer v. Liberty Mutual Fire Insurance Co.*, 710 N.E.2d 1116, 1120 (Ohio 1999).[1] Considering the Clarks' claims under each of the policies in turn, we ultimately conclude (as the district court did) that the Clarks have breached the prompt-notice and subrogation provisions in all three of the policies. However, while the district court believed that these breaches alone were sufficient to justify the grant of summary

---

[1] In *Scott-Pontzer*, the Ohio Supreme Court held that an employee, who was not acting within the scope of his employment at the time of his injury, was nonetheless an insured under his corporate employer's commercial liability policy when the policy designated the corporation as the named insured, but defined "insured" to include "you" and "[i]f you are an individual, any family member." *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 710 N.E.2d 1116, 1118 (Ohio 1999). The Ohio Supreme Court reasoned that it "would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees." *Id.* at 1119. Claims that involve an employee seeking coverage under his or her employer's commercial policies that rely on an ambiguous provision defining who is an insured have come to be known as *Scott-Pontzer* claims. *See Lee-Lipstreu v. Chubb Group of Ins. Cos.*, 329 F.3d 898, 899 (6th Cir. 2003) (describing further the nature of these *Scott-Pontzer* claims).

We note that all of the insurance policies in this case have the same sort of ambiguity regarding who is an insured as the policy in *Scott-Pontzer* referred to above, making it reasonable for the parties to assume that the Clarks were, in fact, insureds under the policy.

judgment to Federal, the Ohio Supreme Court's recent decision in *Ferrando* makes it clear that breaches of prompt-notice and subrogation provisions are only considered *presumptively* prejudicial. Since the Clarks as of yet have had no opportunity to adduce evidence that might rebut this presumption, we remand this case to the district court so that it might hear evidence on this point with respect to all three of the policies at issue.

## D. The Auto Policy

The Clarks' first claim is under the Auto policy. Federal acknowledges that the Auto policy explicitly provides UM/UIM insurance and does not dispute that the Clarks are insureds under it. Three parts of the Auto policy are relevant here. First, the Auto policy has a general notification clause, which requires that insureds notify Federal "promptly":

> 2.  DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
> a.  In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>    (1) How, when and where the "accident" or "loss" occurred;
>    (2) The "insured's" name and address; and
>    (3) To the extent possible, the names and addresses of any injured persons and witnesses.
> b.  Additionally, you and any other involved "insured" must: . . .
>    (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
>    (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit."

J.A. at 237-38. This notification clause was later amended to require prompt notification of a potential settlement:

2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:

. . .

c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle."

J.A. at 246. Lastly, in addition to these notice clauses, the Auto policy also has a subrogation provision:

5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

J.A. at 238.

Federal claims that the Clarks breached these provisions by not promptly notifying Federal of their claim and by releasing both Sholtis and his insurance carrier from all liability, thereby destroying Federal's subrogation right against them. The Clarks concede that they did not contact Federal until March 3, 2000, roughly six years after the accident. They also admit that they fully released Sholtis and Personal from all liability — five years before notifying Federal.

The Ohio Supreme Court, in a decision issued after the parties filed their appellate briefs (but before oral argument), has made clear the law that governs breaches of these types of notice and subrogation clauses. *See Ferrando*, 781 N.E.2d at 945-46. The Ohio Supreme Court explained its holdings as follows:

Accordingly, we hold that when an insurer's denial of UIM coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.

. . .

As in cases involving a breach of a prompt-notice provision, a presumption of prejudice should be applied when evaluating the effects of the breach of a consent-to-settle or other subrogation-related provision. As in breach of prompt-notice cases, we find that the burden of presenting evidence to show a lack of prejudice should be on the insured who has failed to comply with the terms of the policy. An additional reason for applying a presumption of prejudice with the burden of presenting evidence on the insured is that the General Assembly has specifically allowed a right of subrogation to providers of UIM coverage [in Ohio Rev. Code § 3937.18(j)].

*Ibid.* We believe that two aspects of *Ferrando* are essential to this case and thus are worth repeating. First, breaches of notice and subrogation provisions serve to vitiate the coverage provided by an insurance policy only if they are prejudicial to the insurer. Second, breaches are presumed to be prejudicial unless proven to be harmless by the insureds.

These twin principles apply equally to breaches of notice provisions and subrogation provisions.[2]

*Ferrando* has essentially laid out a two-part inquiry describing how courts should handle breaches of prompt-notice and subrogation clauses. First, a court must determine whether the provision was breached. If the relevant provision was breached, a court must then ask whether the insurer was prejudiced by the breach. *Id.* at 947. These inquiries are to be kept "separate and distinct" (i.e., one does not determine whether a provision was breached by looking to whether there was any resultant prejudice from the breach). *Id.* at 949.

---

[2] We note that the state of the law before *Ferrando* was somewhat unclear. It appears that before *Ferrando*, any breach of a subrogation provision prevented an insured from recovering under an insurance policy, at least in the context where an insured never even informs the insurer of a prospective settlement. *See Bogan v. Progressive Cas. Ins. Co.*, 521 N.E.2d 447, syllabus para. 4 (Ohio 1988); *see also Ferrando v. Auto-Owners Mut. Ins. Co.*, 781 N.E.2d 927, 945 (Ohio 2002) (noting that under "paragraph four of the syllabus of *Bogan* . . . there is no need to inquire into insurer prejudice when such a [subrogation] clause is breached"). *Ferrando*'s overruling of this aspect of *Bogan* incontrovertibly was a change in the way Ohio law treated breaches of subrogation-related insurance clauses. *See Thacker v. Cent. Mut. Ins. Co.*, No. 02CA9, 2003 WL 1145449, at *6-*7 (Ohio Ct. App.–4th Dist. Mar. 11, 2003) (noting that "under *Bogan*, settlement without an opportunity for the insurer to exercise its subrogation rights was a *per se* bar to coverage under the policy" so that the *Bogan* court's "analysis contained no prejudice component," and that all "this changed with the Supreme Court of Ohio's decision in *Ferrando*").

The Ohio Supreme Court's decision in *Ferrando* was not a departure from Ohio precedent in its treatment of prompt-notice provisions, as it was clear even before *Ferrando* that a breach of a prompt-notice provision did not necessarily preclude coverage. Instead, the breach of the provision had to be prejudicial. *See Ruby v. Midwestern Indem. Co.*, 532 N.E.2d 730, 732 (Ohio 1988) (finding "ample evidence that [the insurer] was prejudiced by the delay" in the case at bar, but noting that prejudice could be presumed if there was an "[u]nreasonable delay in the giving of notice").

In this case, we hold that both the prompt-notice and the subrogation provisions were breached. First, we turn to the prompt-notice provisions. The Ohio Supreme Court affirmed in *Ferrando* the earlier notion that "[a] provision in an insurance policy requiring 'prompt' notice to the insurer requires notice within a reasonable time in light of all the surrounding facts and circumstances." *Ruby v. Midwestern Indem. Co.*, 532 N.E.2d 730, 732 (Ohio 1988) (cited in *Ferrando*, 781 N.E.2d at 947). The plaintiffs here notified Federal in March of 2000, but the accident occurred in 1994. Recognizing the apparent unreasonableness of the six-year delay, the Clarks argue that we must consider that delay in light of the fact that the Clarks' claim against Federal only became viable because of the 1999 *Scott-Pontzer* decision, which was handed down five years after the accident and only nine months before notice was given. We, however, have already rejected this argument. *See Lepley v. Hartford Acc. & Indem. Co.*, No. 01-4304, __ F.3d __, 2003 WL 21487313 (6th Cir. June 30, 2003). In *Lepley*, the plaintiff argued "that prior to the *Scott-Pontzer* decision, she had no reason to believe that she would be covered under the policies, and she claims that Hartford [in any event] would have denied her claim." *Id.* at *6. We stated that "*Lepley* may be correct that Hartford would have denied coverage, but Lepley could have litigated the matter" and that "[a]waiting a favorable Ohio Supreme Court decision is not a reasonable excuse for delaying notice and failing to preserve subrogation rights." *Id.* In light of *Lepley*, we must hold that the Clarks have breached the notice clauses of the Auto policy.

It is similarly clear that the Clarks have breached the subrogation provision of the Auto policy. The policy explicitly requires that the plaintiffs do nothing to impair Federal's right to subrogation, and the Clarks here admit that they released the tortfeasor and his insurance company several years before Federal was even notified of the accident. This is a clear breach of the insurance agreement.

Having determined that the prompt-notice and subrogation provisions were breached, however, we find ourselves unable to proceed on the "prejudice" component of the *Ferrando* analysis. Under *Ferrando*, the breach of the prompt-notice and subrogation provisions is presumed to be prejudicial, and the plaintiffs have the obligation of overcoming that presumption with persuasive evidence. Here, however, the Clarks as of yet have had no chance to prove that Federal was not prejudiced by the Clarks' breaches of the prompt-notice and subrogation provisions. Without the benefit of *Ferrando*, the district judge ended his analysis when he concluded that the Clarks had breached the two provisions; he assumed that any breach in the notice and subrogation provisions foreclosed the Clarks' claim.

Although the plaintiffs have not rebutted the presumption of prejudice at this point in the litigation, it is certainly possible that, now informed of *Ferrando*'s standards, they could adduce evidence to this effect on remand. We therefore remand this case to the district court so that it may determine, as an initial matter, whether the plaintiffs can overcome the presumption of prejudice that attaches to their breaches of the prompt-notice and subrogation provisions. We note that this has been the procedure in several post-*Ferrando* Ohio cases where the factfinding was conducted before *Ferrando* was decided; many courts have remanded *Scott-Pontzer* cases to the trial court for further proceedings, reasoning that it would be manifestly unjust to dismiss the plaintiffs' claims before they had an opportunity to show that their breaches of notice and subrogation provisions were non-prejudicial. *See, e.g., Marshall v. Colonial Ins. Co. of Cal.*, No. 80868, 2003 WL 21054784, at *4 (Ohio Ct. App.–11th Dist. May 12, 2003); *Contrucci v. Nationwide Mut. Fire Ins. Co.*, No. 2002CA00403, 2003 WL 1958247, at *3 (Ohio Ct. App.–5th Dist. Apr. 21, 2003); *Brozovic v. St. Paul Fire & Marine Ins. Co.*, No. F-02-012, 2003 WL 252483, at *4 (Ohio Ct. App.–8th Dist. Feb. 6, 2003); *Cincinnati Ins. Co. v. Carroll,*

F-02-012, 2003 WL 257407, at *1 (Ohio Ct. App.–6th Dist. Feb. 4, 2003).[3]

## E.  The CGL Policy

We now turn to the second policy at issue in this case, the comprehensive general liability ("CGL") policy. Ultimately, we draw the same conclusion with regard to the CGL policy that we drew in our analysis of the Auto policy. While the Clarks have breached the prompt-notice and subrogation provisions of the CGL policy, it is unclear whether the breaches have been prejudicial to Federal. For that reason, we remand this claim as well to the district court for further proceedings.

The CGL policy does not, by its text, provide UM/UIM coverage. However, under the version of Ohio Rev. Code Ann. § 3937.18 in existence at the time the policy covering Clark's accident was issued (and therefore the version legally relevant here, *see Wolfe v. Wolfe*, 725 N.E.2d 261, 266 (Ohio 2000)), insurers were required to offer UM/UIM coverage

---

[3] Our decision to remand this case is in no way inconsistent with our decision in *Lepley*, where we dismissed the plaintiff's case after determining that the prompt-notice provision in the policy was breached and that the plaintiff had not shown the breach to be non-prejudicial. *See Lepley v. Hartford Acc. & Indem. Co.*, No. 01-4304, __ F.3d __, 2003 WL 21487313, at *6-*7 (6th Cir. June 30, 2003).

The distinguishing feature about *Lepley* is that in *Lepley* the district court had already analyzed the prejudice issue and had stated in its opinion that Lepley offered "no evidence to show that the more than fourteen-year delay in receiving [notice] did not prejudice the defendants." *Id.* at *6. Here, however, the district court did not examine the issue of prejudice, believing that it was unnecessary. Given that the purpose of our remanding this case is to insure that the plaintiffs have, at some point in the litigation, an opportunity to show that their breaches of the prompt-notice and subrogation provisions are non-prejudicial, we find *Lepley*'s dismissal of the plaintiff's claim completely consonant with our decision to remand the case here.

whenever they offered a motor-vehicle insurance policy. *See* OHIO REV. CODE ANN. § 3937.18(A) (1994); *see also Gyori v. Johnston Coca-Cola Bottling Group, Inc.*, 669 N.E.2d 824 (Ohio 1996) (interpreting the statute before the 1997 changes made to it in H.B. 261); *Linko v. Indem. Ins. Co. of N. Am.*, 739 N.E.2d 338 (Ohio 2000) (same). Federal does not dispute that UM/UIM coverage was not offered properly under *Linko* and *Gyori* or that James Clark was an insured under the CGL policy.[4] Federal instead argues that it never had any obligation to offer UM/UIM coverage because the CGL policy was not a motor-vehicle policy within the meaning of the statute.

At first glance the CGL policy does not appear to be a motor-vehicle policy; it categorically excludes automobile coverage. However, there are two exceptions to that general exclusion, one providing coverage in cases of property damage arising out of the operation of mobile equipment (the "mobile equipment" exception), and the other providing liability coverage for incidents arising out of the parking of automobiles on or next to the company's premises (the "parking attendant" exception). The Clarks have expressly abandoned the argument that the mobile-equipment exception is sufficient to turn the CGL policy into a motor-vehicle policy, *see* Appellant Br. at 20-21 n.5, and we have squarely rejected the argument that a parking-attendant exception can transform an insurance policy into a motor-vehicle policy within the meaning of OHIO REV. CODE ANN. § 3937.18, *see Lee-Lipstreu*, 329 F.3d at 903 (holding "that the 'parking attendant' provision in the Federal policy," which is identical

---

[4]Federal does dispute that Donna Clark was an insured under the CGL policy. Because the district court did not rule on this question and because we have already decided to remand this case to the district court for it to address the Clarks' claim under the Auto policy, we decline to address this issue. We leave this issue to the district court to handle in the first instance on remand.

to the parking-attendant provision in the case at bar, "did not create automobile liability coverage"). As a result, it would not be inappropriate for us to conclude that the CGL policy was not a motor-vehicle policy within the meaning of former OHIO REV. CODE ANN. § 3937.18. Nevertheless, we decline to do so at this time, because this very issue is currently pending before the Ohio Supreme Court. *See Burkhart v. CNA Ins. Co.*, No. 2001CA00265, 2002 WL 316224 (Ohio Ct. App.–5th Dist. Feb. 25, 2002), *accepted for review*, 770 N.E.2d 1048 (Ohio July 3, 2002) (argued April 15, 2003). *Burkhart* involves precisely the same question presented here, whether "parking attendant" and "mobile equipment" exceptions to a commercial policy's general exclusion of automobile coverage are sufficient to render the policy a motor-vehicle policy within the meaning of former OHIO REV. CODE ANN. § 3937.18. Because the Ohio Supreme Court's decision in *Burkhart* will definitively resolve this issue and because a remand is already in order in this case, we choose not to rule upon this issue at this time, allowing the district court below to reexamine it on remand with the benefit of the Ohio Supreme Court's decision in *Burkhart*, which by then will have been decided.[5]

We now turn to Federal's arguments that the Clarks cannot recover under the CGL policy because they have breached the prompt-notice and subrogation provisions therein. The CGL policy contains the following provisions:

---

[5]The district court is bound to follow our decision in *Lee-Lipstreu* unless our decision is rejected by the Ohio Supreme Court. All of our decisions in diversity cases are efforts to apply state law; we welcome clarifications of state law by the Ohio Supreme Court.

DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT
a.    You must see to it that we are modified[6] as soon as practicable of an occurrence which may result in a claim

. . .

c.    You and any other involved insured must:
(1)   immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
(2)   authorize us to obtain records and other information;
(3)   cooperate with us in the investigation, settlement or defense of the claims or suit; and
(4)   assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

J.A. at 259.

OUR RIGHT TO RECOVER PAYMENT
If the insured has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

J.A. at 261.

For the same reasons that we concluded that the Clarks had breached the prompt-notice and subrogation provisions in the Auto policy, we must also conclude that the Clarks had

---

[6]Presumably this was meant to read 'notified.'

breached the above prompt-notice and subrogation provisions in the CGL policy. The Clarks argue that the prompt-notice and subrogation provisions that appear in the CGL policy do not apply to the UM/UIM coverage that arises by operation of law. We, however, rejected this argument in *Lepley*, where we made the distinction between conditions precedent, which do "carry over" into coverage implied from an insurance policy, and liability exclusions, which do not "carry over" into implied coverage. This distinction was necessary to reconcile the Ohio Supreme Court's holding that scope-of-employment exclusions in a written policy did not apply to UM/UIM coverage that arose as a matter of law under that policy, *see Scott-Pontzer*, 710 N.E.2d at 1120, with the obvious fact that *some* provisions of the written policy (such as the definition of who an insured is under the policy) must also apply to implied UM/UIM coverage — as otherwise even parties with absolutely no connection to Federal that were injured by an underinsured motorist could recover under Federal's policy. *Lepley* concluded that notice and subrogation clauses were conditions precedent (rather than liability exclusions), and held that "notice and subrogation clauses are valid and enforceable preconditions to an insured's duty to provide underinsured motorist coverage even where UM/UIM coverage arises as a matter of law." *Lepley*, __ F.3d __, 2003 WL 21487313, at *4 (quotation and brackets omitted). Under *Lepley*, notice and subrogation provisions do apply to implied UM/UIM coverage, and we reject the Clarks' contentions to the contrary.

Having concluded that the prompt-notice and subrogation provisions do apply to the UM/UIM coverage that arises by operation of law under the CGL policy and having determined that the Clarks did in fact breach those provisions, we find ourselves again unable to determine whether the breaches were prejudicial because the district court ended its analysis after determining the issue of breach. Because the Clarks should be given the chance to show that the breaches were in

fact not prejudicial, we remand this issue to the district court for further proceedings.

## F.  The Excess Policy

Having remanded this case on the issues of whether the Clarks should recover on the Auto and CGL policies, we do not address the Clarks' claim under the excess policy.  In order to recover under the excess policy, the policy apparently requires the Clarks to have recovered under one of the other policies and to have exhausted the limits of the other policy.  The district court, having concluded that the Clarks could not recover under either of the two other policies, did not address the excess policy.  Because the district court did not rule on the excess policy, we decline to do so as well, leaving this matter for the district court to address on remand.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment and **REMAND** this case for further proceedings consistent with this opinion.