OPINION
{¶ 1} Angela Florence appeals from the trial court's entry of summary judgment against her on claims for underinsured motorist (UIM) coverage through commercial auto and business catastrophe policies issued to her employer.[1]
 {¶ 2} Florence advances six assignments of error. First, she contends the trial court erred in relying on an uninsured/underinsured ("UM/UIM") endorsement to enter summary judgment because there is a genuine issue of material fact as to whether the endorsement was in effect at the time of the car accident underlying her claims. Second, she argues that the trial court erred in relying on the UM/UIM endorsement because it was not negotiated and was not supported by consideration. Third, she claims the trial court erred by finding that the UM/UIM endorsement precluded coverage for her injuries. Fourth, she asserts that the trial court erred in failing to find a genuine issue of material fact as to whether the car she was driving at the time of her accident qualified as a "newly acquired auto" under the UM/UIM endorsement to the commercial auto policy. Fifth, she contends the trial court erred in failing to apply the requirements of Linko v. Indemnity Ins. Co. of N. Am.,90 Ohio St.3d 445, 2000-Ohio-92, to the UM/UIM endorsement. Sixth, she argues that the trial court erred in finding Selander v. ErieIns. Group, 85 Ohio St.3d 541, 1999-Ohio-287, inapplicable to her employer's business catastrophe policy.
 {¶ 3} Upon review, we find no genuine issue of material fact as to whether the UM/UIM endorsement was in effect at the time of the accident. We also conclude, as a matter of law, that the UM/UIM endorsement was adequately negotiated and was supported by consideration. We also find that the endorsement precluded coverage for Florence's injuries, and that her car was not a "newly acquired auto" under the commercial auto policy. Finally, we reject the argument that the trial court should have appliedLinko and Selander in the present case. Accordingly, the judgment of the trial court will be affirmed.
 I. {¶ 4} Construed most strongly in Florence's favor, the evidence reflects that an underinsured motorist negligently struck her Chevy Impala on the morning of April 23, 2001. At the time of the accident, Florence was driving to the post office to pick up mail for her employer, Banfill Plastering, Inc. ("Banfill"), before proceeding to work. Because the tortfeasor's liability insurance was insufficient to compensate Florence fully for her injuries, she commenced the present action to obtain UIM benefits under commercial auto and business catastrophe policies issued to Banfill by appellee Erie Insurance Company ("Erie"). In opposition to Florence's claims, Erie argued in the trial court that a UM/UIM endorsement to the business auto policy precluded coverage. Erie also argued that Florence could not obtain UIM benefits under the business catastrophe policy unless she qualified for such benefits under the commercial auto policy. The trial court agreed and entered summary judgment in Erie's favor. This timely appeal followed.
 II. {¶ 5} In her first assignment of error, Florence contends the trial court erred in relying on the UM/UIM endorsement to enter summary judgment because there is a genuine issue of material fact as to whether it was in effect at the time of her April 23, 2001, auto accident. In particular, she claims a factual dispute exists over whether the endorsement was mailed by Erie and received by Banfill.
 {¶ 6} Upon review, we find no merit in Florence's argument. The endorsement in question is Ohio UM/UIM endorsement AHOU01-10/00. Florence does not dispute that this endorsement is listed on the declarations page of the Erie commercial auto policy issued to Banfill for the relevant policy period of November 14, 2000, to November 14, 2001. Nevertheless, she cites deposition testimony from Erie underwriter Richard Semrau, who stated that he could not verify when a particular endorsement was mailed to an insured or whether an insured actually received an endorsement mailed to it. Although we do not dispute Semrau's testimony, it fails to create a genuine issue of material fact because Banfill president Judy Campion testified in her own deposition that she received the commercial auto declarations and the UM/UIM endorsement in November, 2000, which was well before the accident in this case. (Campion depo. at 10-16).
 {¶ 7} Florence next argues that a genuine issue of material fact exists because Erie certified two different UM/UIM endorsements as being in effect at the time of the accident. In light of this fact, she contends summary judgment was inappropriate. We disagree. In support of its motion for summary judgment, Erie relied on Ohio UM/UIM endorsement "AHOU01 (Ed. 10/00)." In the course of discovery, however, Erie identified a later version of the endorsement as being applicable. The later version bore a date of November, 2001, which was approximately six months after Florence's accident. Florence's counsel noted the discrepancy prior to the trial court's summary judgment ruling (See Doc. #49), and Erie responded by explaining that it inadvertently had supplied Florence with the later version, which, based on its date, plainly did not apply. In light of this undisputed explanation and the fact that the policy declarations page correctly identified "AHOU01 10/00" as being the applicable version, we find no genuine issue of material fact as to which version of the endorsement applied. Accordingly, we overrule Florence's first assignment of error.
 III. {¶ 8} In her second assignment of error, Florence argues that the trial court erred in relying on the UM/UIM endorsement because it was not negotiated and was not supported by consideration. In support, she notes that Banfill president Judy Campion paid the premium for the Erie commercial auto policy and the accompanying UM/UIM endorsement before receiving a copy those materials from the insurance company.
 {¶ 9} With regard to the issue of negotiation, the Ohio Supreme Court has recognized that "the terms of [a] policy must be mutually agreed-upon to be effective, in accordance with contract principles." Nationwide Mutual Ins. Co. v. Marsh
(1984), 15 Ohio St.3d 107, 109. In that case, the court found an endorsement unenforceable because the insured never consented to it and did not even become aware of the endorsement until after the accident. In the present case, however, Campion admitted that she received a copy of the endorsement and reviewed it in November, 2000, which was long before the April, 2001, accident. Erie was not required to discuss every aspect of the commercial auto policy with Campion, who had ample time to review the policy and question it prior to Florence's accident. Cf. Mezerkor v.Mezerkor (June 30, 1992), Geauga App. No. 90-G-1560, rev'd on other grounds, 70 Ohio St.3d 304, 1994-Ohio-288. The fact that Campion paid her premium before receiving a copy of the policy and endorsement does not alter our conclusion that the UM/UIM endorsement was adequately negotiated. Campion made a monthly premium payment for the commercial auto policy in late October, 2000, before it was due. She then received the renewal policy, declarations, and endorsements in November, 2000. At that time, she voiced no objection and continued making her payments in the following months. As a result, Campion plainly consented to the terms of the UM/UIM endorsement long before Florence's accident.
 {¶ 10} With regard to the issue of consideration, Florence reasons that the endorsement was "was not part of the parties' original insurance contract" and, therefore, was not supported by consideration. Although this argument is not entirely clear, we are convinced that the commercial auto policy and the UM/UIM endorsement in effect for the relevant November, 2000, to November, 2001, policy period were supported by consideration. Indeed, Campion paid the policy premiums in exchange for the issuance of the policy and the endorsement. Furthermore, the fact that the premium may not have changed as a result of the UM/UIM endorsement being included does not mean Campion paid no consideration for the endorsement. We find no authority for the proposition that parties to an insurance contract cannot agree to alter the nature of the coverage unless they also alter the premium. Florence's second assignment of error is overruled.
 IV. {¶ 11} In her third assignment of error, Florence claims the trial court erred by finding that the UM/UIM endorsement precluded coverage for her injuries. In support, she first notes that a computer-generated printout of the endorsement does not contain any words in bold type. Florence raises this issue because the commercial auto policy provides that words in bold type have special meaning. Given that none of the words in the computer-generated printout of the UM/UIM endorsement are in bold type, Florence reasons that none of those words, some of which identify who qualifies for coverage, can have special meaning. We find this argument to be without merit. Florence raised the same argument in her memorandum opposing summary judgment, and Erie responded by explaining that the computer-generated printout is substantively identical to the UM/UIM endorsement that Florence actually received. The computer-generated printout has some formatting differences, however, such as the absence of bold type, which exists on pre-printed copies of the endorsement. (See Erie's SJ reply memo at 3; Semrau depo. at 23, 40). Florence does not refute this explanation, and we find no genuine issue of material fact.
 {¶ 12} Florence next argues that the main body of the commercial auto policy makes reference to an ambiguous "you" when identifying who has coverage. Although the UM/UIM endorsement contains its own provisions identifying who qualifies for UM/UIM coverage, Florence asserts that the endorsement does not expressly exclude the ambiguous "you" from the main body of the policy. Therefore, she reasons that the ambiguous "you" should be read as carrying over into the UM/UIM endorsement. Based on this premise, Florence then argues that she fits within the ambiguous "you" and, therefore, has UM/UIM coverage.
 {¶ 13} Upon review, we find no merit in the foregoing argument. The main body of the Erie commercial auto policy refers to insureds as "anyone we protect." According to the definitions section of the policy, "anyone we protect" means "any person or organization we specifically state is protected under thecoverage being described." (Emphasis added). In the present case, the relevant coverage is the UIM coverage described in the UM/UIM endorsement. Under that endorsement, the phrase "anyone we protect" includes the following:
 {¶ 14} "1. Any individual named in Item 1 on the Declarations.
 {¶ 15} "2. Any relative if you are an individual named in Item one on the Declarations.
 {¶ 16} "3. An active partner, an active executive officer, or an active member of your organization * * * while occupying a hired auto or a non-owned auto (if a premium for Liability Protection is shown on the Declarations), an owned auto, a temporary substitute auto, or a newly acquired auto, except if the auto is owned by him or her or a member of his or her household.
 {¶ 17} "4. Your employees while occupying:
 {¶ 18} "a. an owned auto, a temporary substitute, or a newly acquired auto.
 {¶ 19} "b. a hired auto (if a premium for Liability protection is shown on the Declarations).
 {¶ 20} "c. a non-owned auto (if a premium for Liability protection is shown on the Declarations) while used in your business other than an auto owned by the employee or member of his or her household.
 {¶ 21} "5. Anyone else while occupying a hired auto or a non-owned auto (if a premium for Liability protection is shown on the Declarations), an owned auto, a temporary substitute auto, or a newly acquired auto, other than:
 {¶ 22} "a. one being used without the permission of the owner;
 {¶ 23} "b. one you are using that is owned by another person residing in your household;
 {¶ 24} "c. one being operated by anyone other than you or a relative;
 {¶ 25} "d. the owner or anyone else from whom you hire or borrow the auto;
 {¶ 26} "e. someone occupying an auto we insure while he or she is working in a business of selling, servicing, repairing, parking, cleaning, painting, or storing autos, unless that business is yours;
 {¶ 27} "6. Anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage."
 {¶ 28} In the present case, "Item 1" on the policy declarations lists only Banfill Plastering, Inc., and Banfill Supply, Inc. In addition, Florence is not an active partner, an active executive officer, or an active member of either entity. Therefore, categories 1, 2, and 3 above do not apply. Since Florence is an employee of Banfill, category 4 potentially does apply. Finally, because Florence is a Banfill employee, categories 5 and 6 do not apply as they refer to "anyone else" (i.e., anyone not covered in the preceding categories). The crucial issue, then, is whether Florence fits within the scope of category 4, which addresses UM/UIM coverage for Banfill employees.
 {¶ 29} Subdivision "a" of category 4 does not apply because Florence's Impala was not owned by Banfill. Nor was it a "temporary substitute" for a car owned by Banfill, or a vehicle "newly acquired" by the company. To the contrary, as set forth more fully, infra, in our analysis of Florence's fourth assignment of error, the Impala was owned by Florence and her husband Likewise, subdivision "b" of category 4 does not apply because the Impala was not Banfill's "hired auto." The commercial auto policy excludes from the definition of "hired autos" any car owned by Banfill's employees. As noted above, Florence and her husband owned the Impala, and Florence is a Banfill employee. Finally, subdivision "c" of category 4 does not apply because it expressly excludes "an auto owned by the employee or member of his or her household," and Florence and her husband own the Impala. As a result, the trial court correctly found that she was not entitled to UIM coverage in the present case.
 {¶ 30} In opposition to the foregoing conclusion, Florence cites language in the definitions section of the commercial auto policy that states:
 {¶ 31} "In the RIGHTS AND DUTIES — GENERAL POLICY CONDITIONS Section, `anyone we protect' means:
 {¶ 32} "1. You and
 {¶ 33} "2. persons or organizations listed under PERSONS WE PROTECT in the LIABILITY PROTECTION Section."
 {¶ 34} Florence reasons that the above reference to "you" is ambiguous. Therefore, she argues that she is included within the definition of "you," pursuant to Scott-Pontzer v. Liberty Mut.Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292. We disagree. In rejecting this argument we first note that in Westfield Ins. Co.v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, the Ohio Supreme Court limited Scott-Pontzer, holding that a policy of insurance naming a corporation as an insured for UM/UIM purposes covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. In the present case, the "you" cited by Florence refers to Banfill, which is a corporation, and Florence appears to have been acting within the course and scope of her employment when she was injured. Therefore, the rationale of Scott-Pontzer potentially remains applicable in this case.
 {¶ 35} Banfill's argument nevertheless fails because her claim is not governed by the definition upon which she relies. As noted above, the UM/UIM endorsement provides its own specific categories of individuals and entities that qualify for coverage thereunder. The definition of "anyone we protect" cited by Florence applies, by its own terms, only to the "RIGHTS AND DUTIES — GENERAL POLICY CONDITIONS Section" of the Erie commercial auto policy, not to the UM/UIM endorsement. Therefore, we find no merit in Florence's claim that the endorsement is defective because it does not expressly exclude the language upon which she relies, namely the allegedly ambiguous "you."
 {¶ 36} For the same reason, we also reject Florence's argument that reference to specific categories of insureds in the UM/UIM endorsement does not eliminate the ambiguity in the word "you." As we have explained, the word "you" cited by Florence applies to a different portion of the policy. It does not apply to the UM/UIM endorsement. Therefore, it is immaterial whether the UM/UIM endorsement clarifies the "you" upon which she relies. In any event, contrary to the argument set forth in Florence's appellate brief, this court generally has held that including specific coverage for vehicles or individuals other than a corporate "you" does eliminate Scott-Pontzer ambiguity. See, e.g., Hoop v. Nationwide Mut. Fire Ins. Co., Montgomery App. No. 19686, 2003-Ohio-3772; White v. American ManufacturersMutual Ins. Co., Montgomery App. No. 19206, 2002-Ohio-4125. Accordingly, we overrule Florence's third assignment of error.
 V. {¶ 37} In her fourth assignment of error, Florence asserts that the trial court erred in failing to find a genuine issue of material fact as to whether the car she was driving at the time of her accident qualified as a "newly acquired auto" under the UM/UIM endorsement to the commercial auto policy. This issue is significant because the endorsement provides UIM coverage to Banfill employees while they are occupying a "newly acquired auto."
 {¶ 38} Having reviewed the relevant policy language, we find no merit in Florence's argument. The Erie commercial auto policy defines a "newly acquired auto" as an automobile that Banfill acquired during the policy period. Such autos may replace an owned auto or be additional autos. In the present case, however, the uncontroverted evidence demonstrates that the Impala was never "acquired" by Banfill. The car belonged to Florence and her husband, who purchased it to replace an Isuzu that they previously had leased. The parties listed on the Impala's title were Florence, her husband, and a bank from which they obtained a car loan. Banfill did not own the vehicle. In addition, the Impala was covered under a State Farm policy issued to Florence and her husband, and Banfill was not listed as an insured under that policy.
 {¶ 39} To support her claim that the Impala was Banfill's "newly acquired auto," Florence contends she was driving the vehicle in the course of her employment and Banfill was paying her for such business-related use of the car. Upon review, we do not dispute either point. The record reveals that Florence was driving to the post office to pick up mail for Banfill when she was hit. The record also indicates that Banfill made a one-time payment of $1,500 to compensate her for using her car to run errands for the company. In addition, Banfill made on-going payments of $45 per week to compensate Florence for continuing to drive the Impala on work-related business. These facts establish that Banfill paid Florence for driving her car. They do nothing to establish that Banfill had an ownership interest in the Impala or "acquired" it for purposes of the UM/UIM endorsement.[2]
Accordingly, we overrule Florence's fourth assignment of error.
 VI. {¶ 40} In her fifth assignment of error, Florence contends the trial court erred in failing to apply the requirements ofLinko v. Indemnity Ins. Co. of North America,90 Ohio St.3d 445, 2000-Ohio-92, to Erie's UM/UIM policy endorsement. In essence, she argues that the endorsement reduced the UIM coverage that previously had been available (presumably in prior policy periods) by restricting who qualifies as an insured. According to Florence, this change implicated the Ohio Supreme Court's Linko
decision and obligated Erie to meet conditions imposed in that case.
 {¶ 41} We find no merit in Florence's argument. Linko
involved the validity of a UM/UIM rejection form. In Linko, the Ohio Supreme Court held that an insured's rejection of a written offer of UM/UIM coverage is invalid unless the offer includes a brief description of the coverage, the premium for that coverage, and an express statement of the coverage limits. Id. at 449. Florence reasons by analogy that Erie was required to supply this same information in connection with the UM/UIM endorsement it offered to Banfill. We note, however, that Banfill president Judy Campion did not reject an offer of a UM/UIM endorsement. Rather, she accepted the endorsement and paid the policy premiums, thereby obtaining UM/UIM coverage as set forth in the endorsement. We note too that the endorsement itself did describe the coverage provided, and the accompanying policy declarations identified the premium for the coverage and included a statement of the coverage limits. Finally, insofar as the UM/UIM endorsement defined the insured class differently than other portions of the policy and included its own exclusions, we note that Ohio law does not require UM/UIM coverage to "be equivalent in substance to the liability coverage" in a policy. LumbermensMut. Cas. Co. v. Xayphonh, Summit App. No. 21217, 2003-Ohio-1482. Accordingly, we overrule Florence's fifth assignment of error.
 VII. {¶ 42} In her sixth assignment of error, Florence argues that the trial court erred in finding Selander v. Erie Ins. Group,85 Ohio St.3d 541, 1999-Ohio-287, inapplicable to her employer's business catastrophe policy. We disagree. Selander involved a commercial general liability policy of insurance. The Ohio Supreme Court found that the policy qualified as an automobile liability policy. Given that the insurer failed to offer UM/UIM coverage in connection with the policy, the Selander court held that the coverage arose by operation of law. Unlike Selander,
the Erie business catastrophe policy in the present case expressly provides UM/UIM coverage to the same extent that the coverage exists in the underlying commercial auto policy. Therefore, coverage does not arise by operation of law. In addition, Florence is not entitled to UIM coverage under the express terms of the business catastrophe policy because she fails to qualify for such coverage under the commercial auto policy. Accordingly, we overrule her sixth assignment of error.
 VIII. {¶ 43} Having overruled each of Florence's assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Fain, P.J., and Wolff, J., concur.
[1] Angela Florence's husband Michael also appeals from the trial court's entry of summary judgment against him on a derivative loss-of-consortium claim. We need not address this claim separately, however, because our resolution of Angela Florence's arguments disposes of the loss-of-consortium claim as well.
[2] On appeal, the parties dispute whether the payments to Florence were compensation for mileage or partial car payments. This dispute is immaterial. Regardless of how the payments are characterized, the bottom line is that Banfill compensated Florence for driving her Impala on company business. This fact, however, does nothing to establish that Banfill owned the car or otherwise "acquired" it. Construed most strongly in favor of Florence, the evidence suggests only that Banfill made periodic payments to Florence for her work-related use of a car that she owned.