OPINION.
{¶ 1} Plaintiffs-appellants/cross-appellees Steven and Ann Morton appeal from that part of a summary judgment in which the trial court decided that they were entitled to uninsured motorist ("UM") coverage under a business auto policy defendantappellee/cross-appellant Continental Casualty Insurance Company (hereinafter Continental) had issued to Morton's employer only if their damages exceeded the policy's $350,000 deductible amount. In a cross-appeal, Continental appeals from that part of the summary judgment directing that the Mortons were entitled to UM coverage under the business auto policy and a separate umbrella policy. For the following reasons, we reverse the trial court's judgment in part.
I. Factual Background and Procedural History
 {¶ 2} On February 14, 2002, Steven Morton was driving a tanker truck on Interstate 275 for his employer, the Rogers Cartage Company, when a motor vehicle driven by Richard Harley, an uninsured motorist, crossed the interstate median and collided with several vehicles, including Morton's truck. Harley died as a result of the collision. Steven Morton's left femur was fractured in the collision, requiring two surgeries and extensive hospitalization.
 {¶ 3} At the time of the collision, the Mortons had a personal automobile policy with United Farm Family Mutual Insurance Company that provided UM coverage in the amount of $50,000. Morton's employer, Rogers Cartage, a wholly owned subsidiary of Tankstar, U.S.A., Inc., was covered by a business auto policy and a commercial umbrella policy. Both policies were issued by Continental. The business auto policy provided liability coverage in the amount of $2,000,000 per accident with a deductible endorsement requiring Tankstar to pay the first $350,000 of any claim. The commercial umbrella policy supplied excess liability coverage up to a limit of $8,000,000.
 {¶ 4} In May 2002, the Mortons filed a declaratory-judgment action seeking UM benefits under all three policies. Continental and the Mortons filed cross-motions for summary judgment. The trial court issued a decision granting both summary-judgment motions in part and denying both in part. The trial court determined that R.C. 3937.18, as it existed on April 1, 2000, applied to the Mortons' claims. With regard to the business auto policy, the trial court concluded that the $350,000 deductible amount did not make Tankstar and its subsidiaries self-insurers. It further held that because Continental had failed to make a proper offer and to secure a proper rejection of UM coverage under Linko v. IndemnityIns. Co. of N. Am.,[1] such coverage had arisen by operation of law. The trial court concluded, however, that Continental would only be liable for a judgment in excess of the policy's $350,000 deductible amount.
 {¶ 5} With regard to the commercial umbrella policy, the trial court ruled that UM coverage had also arisen by operation of law because Continental had failed to make a proper offer and to secure a proper rejection of such coverage under Linko. The trial court concluded, however, that the umbrella policy was an excess policy that would only apply in the event that the Mortons' damages exceeded the $2 million limit of the underlying business policy. Shortly after the trial court's decision, the Mortons settled their UM claim with United Farm Family for the policy limits and dismissed it from the case.
II. Standard of Review
 {¶ 6} Summary judgment is appropriate where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[2] We review the entry of summary judgment as a matter of law under a de novo standard.[3]
 III. Issues on Appeal
 {¶ 7} The Mortons raise a single assignment of error in which they challenge only that portion of the trial court's judgment relating to the deductible amount under the business auto policy. Continental, on the other hand, raises three cross-assignments of error. In its first cross-assignment of error, Continental argues that its offer and Tankstar's rejection of UM coverage substantially complied with R.C.3937.18. In its second cross-assignment of error, Continental argues that Steven Morton's recovery under the workers' compensation laws prohibited the Mortons from recovering under the policies. In its third cross-assignment of error, Continental argues that the trial court erred in concluding that Ann Morton could recover under either policy following the Ohio Supreme Court's decision in Westfield Ins. Co. v. Galatis.[4]
 {¶ 8} Because Continental's first cross-assignment addresses the more fundamental issue of whether the Mortons were entitled to UM benefits under the policies, we begin by addressing that assignment of error.
IV. The Mortons' Entitlement to UM Benefits under the Policies
 {¶ 9} In its first cross-assignment of error, Continental contends that the trial court erred by determining that its offer and Tankstar's rejection of UM coverage were ineffective. Continental has raised several arguments for our consideration. Continental first contends that the trial court applied the wrong version of R.C. 3937.18 when determining the validity of Continental's offer and Tankstar's rejection of UM coverage under the two policies.
A. The Trial Court Applied the Wrong Version of R.C. 3937.18
 {¶ 10} In Ross v. Farmers Ins. Group,[5] the Ohio Supreme Court held that when "determining the scope of coverage of an uninsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties."
 {¶ 11} In this case, the business auto policy and the commercial umbrella policy both became effective on April 1, 2000. Each policy was renewed on April 1, 2001, for a one-year period. The Mortons argued below that R.C. 3937.18, as amended by S.B. No. 57, governed the interpretation of the insurance contracts. They contended that under Wolfe v. Wolfe[6]
the 2000 policy had to be issued for a two-year period, and therefore that S.B. No. 57, which was effective at the time of the policy's 2000 inception, governed their claims. Continental contends, however, thatWolfe was inapplicable because the policies were not "automobile liability policies" as that term is defined by R.C. 3937.30, and thus that the 2001 versions of the policies, as well as S.B. No. 267, were controlling. The trial court, without elaboration, ruled that the 2000 version of the policies would apply.
 {¶ 12} In Wolfe, the Ohio Supreme Court held that "every automobile liability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties."[7] In Cunninghamv. Transcontinental Ins. Co.,[8] this court relied on case law from the Fifth and Eighth Appellate Districts[9] to hold that the guaranteed two-year policy period in R.C. 3937.31(A) and Wolfe applied only to those automobile insurance policies that were defined in R.C. 3937.30.[10] InCunningham, we held that the insurance company was entitled to summary judgment because the policy at issue (1) insured more than four vehicles and because (2) the vehicles were company-owned.[11] Thus, we concluded that the policy did not satisfy the definition of an automobile insurance policy as set forth in R.C. 3937.30.[12] Other appellate courts have also adopted this analysis, holding that R.C. 3937.30 limits the category of insurance policies to which Wolfe applies.[13]
 {¶ 13} In this case, the business auto policy provided coverage for a schedule of vehicles on file with the company. Tankstar's director of insurance, Richard Yates, testified during his deposition that this schedule listed between 900 and 950 tractortrailers, 50 company cars, and 40 to 50 pickup trucks. Thus, based upon our holding in Cunningham, the business auto policy in this case did not fall within the category of policies to which Wolfe applied. Consequently, the trial court applied the wrong version of R.C. 3937.18 with respect to the business auto policy.
 {¶ 14} The trial court also applied the wrong version of R.C. 3937.18
with respect to the commercial umbrella policy. The commercial umbrella policy, which provided excess liability coverage beyond that in the underlying business auto policy, defined the term "automobile" as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment." Under the policy's definition of an automobile, the policy provided coverage to more than just private passenger vehicles. Because the commercial umbrella policy did not meet the definition of an "automobile insurance policy" under R.C. 3937.30(C), it was not subject to the guaranteed two-year policy period set forth in R.C. 3937.31(A) and Wolfe.[14] Consequently, Continental's first issue for review has merit.
B. The Offer and Rejections Forms were Invalid under Linko
 {¶ 15} Having concluded that the S.B. No. 267 version of R.C. 3937.18
applied to the Mortons' claims, we next address Continental's argument that the trial court erred in holding that UM coverage arose by operation of law under both policies. Continental argues that its offer and Tankstar's rejection of UM coverage under both the business auto policy and the commercial umbrella policy satisfied the Linko requirements. Continental further argues that even if the "four corners" of the offer and rejection failed to comply with Linko, it produced extrinsic evidence, namely the affidavit of Richard Yates, that, when considered with the offer and rejection forms, demonstrated that its offer and Tankstar's rejection of UM coverage satisfied the Linko requirements.
 {¶ 16} Former R.C. 3937.18(A) required insurance companies, when making an offer of automobile liability insurance, also to offer UM coverage in an amount equal to the liability limits of the policy. If an insurance company failed to offer UM coverage in such an amount, UM coverage was deemed to arise by operation of law in the full amount of the policy limits.[15] In Gyori v. Johnston Coca-Cola Bottling Group,Inc.,[16] the Ohio Supreme Court interpreted the statute as requiring both a written offer of UM coverage and a written rejection of UM coverage.[17] In Linko, the Ohio Supreme Court further held that a written offer to provide UM coverage had to contain "a brief description of the coverage, the premium for the coverage, and an express statement of the UM coverage limits."[18] The Linko court also concluded that a parent corporation could only reject UM insurance on behalf of its separately incorporated subsidiary corporations if certain conditions were met.[19] The Linko court required that "separately incorporated named insureds must each be listed in the rejection form," and that the "subsidiary's authorization to a parent corporation to waive UM coverage benefits on its behalf must be in writing and must be incorporated into the contract."[20] In determining whether a waiver of UM coverage had been knowingly and expressly made, the Linko court held that the four corners of the insurance policy controlled.[21] Although it was initially unclear whether the Linko requirements had survived subsequent statutory amendments to R.C. 3937.18, the Ohio Supreme Court stated inKemper v. Michigan Millers Ins. Co.[22] that the Linko requirements still applied to insurance policies written after the enactment of 1997 H.B. No. 261 in 1997 but before the enactment of S.B. No. 97 in 2001.[23]
The Kemper court further "stated that a signed rejection of UM coverage under existing R.C. 3937.18(C), without any oral or documentary evidence of an offer, was not an effective `declination' of UM coverage."[24]
 {¶ 17} Following Kemper, there was confusion among appellate courts about how the Linko requirements applied to an offer and rejection of UM coverage written after H.B. No. 261.[25] In particular, appellate courts struggled with whether they were still limited to examining the four corners of the insurance policy when determining compliance withLinko or whether they could examine extrinsic evidence.[26] A majority of appellate courts, including this court,[27] took the position thatKemper did not alter Linko's holding that extrinsic evidence was impermissible in determining whether an insurer had made a valid offer of UM coverage.[28]
 {¶ 18} Just recently, however, in Hollon v. Clary[29] the Ohio Supreme Court addressed the admissibility of extrinsic evidence. The court held that "a signed, written rejection of UM coverage is valid under the H.B. 261 version of R.C. 3937.18 if it was made in response to an offer that included a brief description of the coverage and the coverage premium limits."[30] The court further held that "once a signed, written rejection of UM coverage is produced, the elements of the offer may be satisfied by extrinsic evidence."[31] In Hollon, the insurance company's written offer of coverage was defective under Linko
because it had failed to set forth the applicable premiums for UM coverage.[32] The Ohio Supreme Court held, however, that when the written offer was considered in conjunction with an affidavit of the named insured's co-owner, who had stated that he had been informed of the premium for the UM coverage, the Linko requirements had been met.[33]
 {¶ 19} In this case, we have reviewed the offer and rejection forms for the business auto policy and for the commercial umbrella policy, and we agree with the trial court's conclusion that the forms, by themselves, failed to satisfy the Linko requirements. While both forms contained a brief description of UM coverage, they did not state the limits of the coverage and did not disclose the premium for coverage in the amount of the liability limits of each policy. Furthermore, while Tankstar and each of its separately incorporated, named insureds were listed on the forms, Tankstar was the only named insured that signed the rejection form.[34]
 {¶ 20} However, given the Hollon decision, our analysis does not end here. Rather, we must determine whether the offer and rejections forms, when combined with the extrinsic evidence offered by Continental, satisfied the Linko requirements.[35] Continental's extrinsic evidence consisted of an affidavit from Richard Yates. In his affidavit, Yates stated that he was the director of insurance for Tankstar and its subsidiary companies; that he was the only person with the authority to select or reject UM coverage on behalf of Tankstar and its subsidiaries; that he was fully aware of the requirements under Ohio law for UM insurance; that he was informed of the premium increases if he were to elect UM coverage under the business auto policy and the commercial umbrella policy; and that he had intended in executing the rejection forms to knowingly and expressly reject UM coverage under both policies.
 {¶ 21} While Yates's affidavit, when read in conjunction with the offer and rejection forms, showed that Tankstar was aware of the premiums for UM coverage and the liability limits of such coverage, there remains an issue concerning the lack of a written rejection of UM coverage by Tankstar's subsidiary corporations. Because the Hollon court did not specifically address that portion of the Linko decision that required that "separately incorporated named insureds must each be listed in the rejection form" and that the "subsidiary's authorization to a parent corporation to waive UM coverage benefits on its behalf must be in writing and must be incorporated into the contract,"[36] we decline to extend the supreme court's holding in Hollon to permit the admission of extrinsic evidence on that issue.
 {¶ 22} Because we are bound to conclude that Tankstar's rejection of UM coverage was defective, we cannot say the trial court erred in holding that the rejection forms were invalid under Linko. Thus, the trial court did not err in failing to grant summary judgment to Continental on this issue. Consequently, we overrule Continental's first cross-assignment of error.
V. The Deductible Amount Acted as a Restriction on UM CoverageArising by Operation of Law
 {¶ 23} Having determined that coverage arose under the two policies by operation of law, we next address the Mortons' sole assignment of error. In that assignment, the Mortons contend that the trial court erred in determining that the deductible amount provided in the liability section of the business auto policy applied to their UM claims. The Mortons argue that the deductible amount was a bargained-for restriction with respect to liability coverage, which could not be applied to UM claims arising by operation of law. Continental argues, on the other hand, that the deductible amount was not a restriction on UM coverage, but was a condition precedent to such coverage.
 {¶ 24} A substantial body of case law has developed among Ohio courts on the applicability of existing provisions in an insurance policy to UM coverage that arises by operation of law.[37] Ohio courts have drawn a distinction between the applicability of policy exclusions and policy conditions when such coverage arises by operation of law.[38] They have held that general conditions in a policy of liability insurance apply to UM coverage imposed by law for the benefit of the insured to the same extent that they apply to the terms of liability coverage.[39] Courts have reasoned that because these provisions do not define the scope of coverage under a policy, but serve as prerequisites to recovery, the intent is for these conditions to apply regardless of the type of coverage at issue.[40] By contrast, however, courts have held that restrictive or exclusionary provisions that apply to liability coverage cannot be made applicable to UM coverage implied by operation of law.[41]
Courts have reasoned that when the parties never contemplated UM coverage, they could not have intended for such coverage to be diminished by the negotiated restrictions imposed upon liability coverage.[42]
 {¶ 25} While we have not specifically addressed the applicability of a deductible amount to UM coverage arising by operation of law, several appellate districts have held that a deductible amount in an insurance policy does not apply to UM coverage arising by operation of law. InGerman v. Therm-O-Disc, Inc., the Fifth Appellate District, relying upon the rationale set forth in Scott-Pontzer, held that a $2,000,000 deductible provision in a commercial liability policy did not apply to UIM coverage arising by operation of law.[43] Similarly, in Grubb v.Michigan Mut. Ins. Co., the Second Appellate District rejected an insurance company's argument that any coverage afforded under its policy did not begin until the employee's damages exceeded the amount of primary liability coverage offered by his employer through its self-insurance deductible amount.[44] The Fourth Appellate District has also held that a deductible endorsement that applied only to the liability coverage under a business auto policy could not serve to limit UM coverage implied by law.[45] More recently, in Sprint Corp. v. Continental CasualtyCo.,[46] the Eighth Appellate District held that a reimbursement endorsement in a business automobile policy was not a condition precedent or an exclusion to coverage under the policy, but rather a restriction on the nature of coverage.[47]
 {¶ 26} In this case, Continental's obligation to provide UM coverage to Tankstar and its subsidiaries arose by operation of law and was not contracted for or contained in the policies. As we have previously discussed, Continental and Tankstar had expressly agreed to exclude UM coverage from the business auto policy through a rejection of such coverage. Because both Continental and Tankstar intended to exclude such coverage, it is difficult to see how they could have envisioned that the deductible amount would have applied to UM coverage created by operation of law. Consequently, we join those appellate districts that have held a deductible amount to be an impermissible restriction on UM coverage imposed by operation of law.[48] We, therefore, conclude that the trial court erred in granting summary judgment to Continental on this issue.
 {¶ 27} While the Mortons have urged us to determine who is responsible for paying the deductible amount under the business auto policy, we refrain from making that determination because it would require us to declare the rights of Tankstar or Rogers Cartage, both of whom were never made a party to the case in the court below. Furthermore, the trial court itself never reached this issue, so it was never a part of its resolution of the case. Consequently, we sustain the Mortons' assignment of error only to the extent that it challenges the trial court's judgment with respect to the effect of the deductible amount.
VI. Continental was not Entitled to Summary Judgment on its Worker'sCompensation Defense
 {¶ 28} Having determined that the deductible amount did not preclude or limit the Mortons from recovering UM benefits under the business auto policy, we next address Continental's second cross-assignment of error. In this cross-assignment, Continental contends that it was entitled to summary judgment because Ohio's workers' compensation laws prohibited Steven Morton from recovering UM benefits.
 {¶ 29} But because we have already concluded based on the record before us that we are unable to determine who is responsible for paying the deductible amount under the business auto policy, and because factual issues remain as to this issue, we cannot say that the trial court erred in refusing to grant summary judgment to Continental on this issue. We, therefore, overrule Continental's second cross-assignment of error.
VI. Westfield v. Galatis does not Preclude Ann Morton's ConsortiumClaim.
 {¶ 30} Finally, we address Continental's third cross-assignment of error. In that cross-assignment, Continental argues that the trial court erred in determining that Ann Morton, a non-employee, was an insured under the business auto policy and the commercial umbrella policy.
 {¶ 31} In Galatis, the Ohio Supreme Court held that "where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured does not extend coverage to a family member of an employee of the corporation, unless that employee is also a named insured."[49]
 {¶ 32} Continental contends that because Ann Morton was not an employee of Tankstar or its subsidiaries, and because she was not otherwise occupying a vehicle owned by Tankstar or any of its subsidiaries, she was not an insured under Westfield and could not recover under the business auto policy or the commercial umbrella policy.
 {¶ 33} While we agree that Ann Morton would not be an insured under either the business auto policy or the commercial umbrella policy after the Galatis decision, the Mortons never asked the court to declare her an insured under either policy. In count three of their complaint, the Mortons alleged that "Ann Morton ha[d] sustained a loss of consortium and loss of services of her husband as a direct and proximate result of the motor vehicle collision of February 14, 2002."
 {¶ 34} Ohio courts have held that a loss-of-consortium claim is a derivative claim,[50] which means that it is "dependent upon the existence of a primary action and can be maintained only so long as the primary action continues."[51] In the context of UM coverage, Ohio appellate courts have held that when an individual is not involved in an accident and the individual's claim is based solely upon a loss of consortium, he or she can only meet the definition of an insured if he or she is entitled to recover for damages sustained by another insured.[52]
Thus, if the main claim in this case, Steven Morton's claim, survives, then Ann Morton's derivative claim would survive as well.[53]
 {¶ 35} Because the Mortons did not claim that Ann Morton was an insured under the policies, and because Steven Morton was in the course and scope of his employment at the time of the collision, Galatis was inapposite. We, therefore, conclude that Continental was not entitled to summary judgment on the loss-of-consortium claim. Consequently, we overrule Continental's third cross-assignment of error.
 {¶ 36} In conclusion, we sustain the Mortons' sole assignment of error and overrule Continental's three cross-assignments of error. We, therefore, reverse the trial court's judgment in part and remand this case to the trial court for a declaration that the deductible amount in the business auto policy does not limit the Mortons' entitlement to the UM coverage that exists by operation of law under both the business auto policy and the commercial umbrella policy, and for a resolution of Continental's workers' compensation defense.
Judgment reversed in part and cause remanded.
Hildebrandt, P.J., and Gorman, J., concur.
[1] 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338.
[2] Civ.R. 56(C).
[3] See Kremer v. White, 1st Dist. Nos. C-030801, C-030802 and C-030843, 2004-Ohio-6154, at ¶ 3.
[4] 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.
[5] 82 Ohio St.3d 281, 289, 1998-Ohio-381, 695 N.E.2d. 732.
[6] 88 Ohio St.3d 246, 2000-Ohio-322, 725 N.E.2d 261.
[7] Id. at 250.
[8] 1st Dist. No. C-020157, 2002-Ohio-7338, at ¶ 6 and ¶ 17.
[9] Zurcher v. Natl. Surety Corp., 5th Dist. No. 2001CA00197, 2002-Ohio-901; Price v. Ayers, 5th Dist. No. 2002 CA00124, 2002-Ohio-5479;McPherson v. Whitt, 8th Dist. No. 81442, 2002-Ohio-6060.
[10] R.C. 3937.30 provides the following:
"As used in sections 3937.30 to 3937.39 of the Revised Code, `automobile insurance policy' means an insurance policy delivered or issued in this state or covering a motor vehicle required to be registered in this state which:
"(A) Provides automobile bodily injury or property damage liability, or related coverage or any combination thereof;
"(B) Insures as named insured, any of the following:
"(1) Any one person;
"(2) A husband and wife resident in the same household;
"(3) Either a husband or a wife who reside in the same household if an endorsement on the policy excludes the other spouse from coverage under the policy and the spouse excluded signs the endorsement. Nothing in this division (B)(3) shall prevent the issuance of separate policies to each spouse or affect the compliance of the policy with Chapter 4509 of the Revised Code as to the named insured or any additional insured.
"(C) Insures only private passenger motor vehicles or other four-wheeled motor vehicles which are classified or rated as private passenger vehicles and are not used as public or private livery, or rental conveyances;
"(D) Does not insure more than four motor vehicles;
"(E) Does not cover garage, automobile sales agency, repair shop, service station, or public parking operation hazards;
"(F) Is not issued under an assigned risk plan pursuant to section4509.70 of the Revised Code."
[11] Cunningham, supra, at ¶ 17.
[12] Id.
[13] See Tano v. Nationwide Mut. Ins. Co., 9th Dist. No. 21692, 2004-Ohio-1237; Reese v. Barbiere, 12th Dist. No. CA2002-09-079, 2003-Ohio-5110; Smith v. Air-Ride, Inc., 10th Dist. No. 02AP-719, 2003-Ohio 1519; McDaniel v. Nationwide Mut. Ins. Co., 10th Dist. No. 02AP-936, 2003-Ohio-2833.
[14] See Dancy v. Citizens Ins. Co., 5th Dist No. 2002-AP-110086, 2003-Ohio-2858, at ¶¶ 36-41 (Edwards, J., concurring); Smith, supra, at ¶¶ 68-74; Bollinger v. The Empire Fire Marine Ins. Co. (Dec. 23, 1986), 4th Dist. No. 1785.
[15] See Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, 163,258 N.E. 2d 429.
[16] 76 Ohio St.3d 565, 1996-Ohio-358, 669 N.E.2d 824.
[17] Id. at 568.
[18] Linko, supra, at 448.
[19] Id. at 449.
[20] Id. at 451.
[21] Id. at 449.
[22] 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196.
[23] Id. at ¶ 2, ¶ 4.
[24] Glover v. Smith, 1st Dist Nos. C-020192 and C-020205, 2003-Ohio-1020, at ¶ 13.
[25] See Akins v. Harco Ins. Co., 158 Ohio App.3d 292, 2004-Ohio-4267,815 N.E.2d 686, at ¶ 26.
[26] Id.
[27] See Glover, supra, at ¶ 18; Miller v. Watkins, 1st Dist. No. C-030065, 2004-Ohio-3132, at ¶ 14; Kremer, supra, at ¶ 14.
[28] See Akins, supra, at ¶ 29; Borger v. Utica Natl. Ins. Group, 2nd Dist. No. 20213, 2004-Ohio-3782, at ¶ 21.
[29] ___ Ohio St.3d ___, 2004-Ohio-6772, ___ N.E.2d ___.
[30] Id. at ¶ 14.
[31] Id.
[32] Id.
[33] Id. at ¶ 13.
[34] See Hindall v. Winterthur Intl. (C.A.6, 2003), 337 F.3d 680, 686, fn. 3.
[35] The H.B. No. 267 version of R.C. 3937.18(C) contains identical language to the H.B. No. 261 version of R.C. 3937.18(C), and the identical language was highlighted in the Hollon decision.
[36] Linko, supra, at 451.
[37] See Lepley v. Hartford Acc. Indemn. Co. (C.A.6, 2003),334 F.3d 544, 548-549.
[38] See Sprint Corp. v. Continental Casualty Co., 8th Dist. Nos. 8346 and 83475, 2004-Ohio-6298, at ¶¶ 20-22.
[39] See Luckenbill v. Midwestern Indem. Co. (2001),143 Ohio App.3d 501, 507, 758 N.E.2d 301.
[40] See Wayne v. Pamer, 9th Dist. No. 02CA0107, 2004-Ohio-1424, at ¶ 10.
[41] See Demetry v. Kim (1991), 72 Ohio App.3d 692, 697-699,595 N.E.2d 997; Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 666, 1999-Ohio-292, 710 N.E.2d 1116.
[42] Wayne, supra, at ¶ 9.
[43] 5th Dist No. 01CA51-2, 2002-Ohio-1848.
[44] 2nd Dist No. 19575, 2003-Ohio-1558, at ¶ 23.
[45] Hall v. Kemper, 4th Dist. No. 02CA17, 2003-Ohio-5457, at ¶ 113.
[46] Sprint, supra, at ¶ 23.
[47] Id.
[48] Cf. Wayne, supra, at ¶ 11.
[49] 100 Ohio St.3d 216, at paragraph three of the syllabus.
[50] See Lawyers Cooperative Publishing Co. v. Muething (1992),65 Ohio St.3d 273, 280, 603 N.E.2d 969; Cross v. Cincinnati Ins. Co., 4th Dist. No. 02CA758, 2004-Ohio-328, at ¶ 44; Breno v. Mentor, 8th Dist. No. 81861, 2003-Ohio-4051, at ¶ 24.
[51] Messmore v. Monarch Mach. Tool. Co. (1983), 11 Ohio App.3d 67,68-69, 463 N.E.2d 108.
[52] See Florence v. Brown, 2nd Dist. No. 19847, 2004-Ohio-772, fn. 1;Piciorea v. Genesis Ins. Co., 8th Dist. No. 82097, 2003-Ohio-3955, at ¶ 19; Jones v. Nationwide Ins. Co. (July 23, 2001), 5th Dist. No. 2000CA00329.
[53] Wagner v. Westfield Cos., 6th Dist. No. F-02-013, 2002-Ohio-6367, at ¶ 21, citing Miller v. Xenia, 2nd Dist. No. 2001CA82, 2002-Ohio-1303;Lumbermans Mut. Casualty Co. v. Phoui Xayphonh, 9th Dist. No. 21217, 2003-Ohio-1482, at ¶ 25.