DECISION AND JUDGMENT ENTRY
{¶ 1} This cause comes on appeal from the Lucas County Court of Common Pleas, which granted summary judgment to appellee, the Cincinnati Insurance Company. For the following reasons, we reverse.
 {¶ 2} On October 15, 2001, appellant, Dorothy Dicks-Malak, was injured in an automobile accident. At the time of the accident, she was employed by Sky Technology Resources, Inc. ("STRI"). The accident undisputedly occurred while appellant was performing duties within the course and scope of her employment.
 {¶ 3} STRI is a subsidiary of Sky Financial Group, Inc. ("SFGI"). SFGI procured a group business automobile insurance policy and a commercial umbrella liability policy for itself, STRI, and approximately 57 other subsidiaries, through the Cincinnati Insurance Company. At the time of the accident, the business auto policy had liability coverage in the amount of $1 million dollars, and the umbrella auto coverage had a limit of $25 million dollars.
 {¶ 4} The tortfeasor had liability insurance coverage in the amount of $100,000. Appellant settled her claim against the tortfeasor for $95,000, with appellee's permission. Subsequently, since appellant's damages exceeded that amount, she sought UIM coverage under STRI's business auto policy and the umbrella policy. After appellee denied her claim, she filed a complaint seeking, inter alia, judgment declaring that both policies contained UIM coverage equaling the amount of liability coverage.
 {¶ 5} Appellee answered denying such coverage, and attached full copies of both policies to its answer. Appellee also counterclaimed, praying for declaratory judgment as to each policy's coverage, and for judgment declaring the amount of damages appellant incurred as a result of appellant's October 15, 2001 accident. After some discovery, both parties moved for summary judgment on all claims. The trial court determined that appellee had made a valid offer of UIM coverage to STRI equal to each policy's limit of liability. It further determined that STRI had effectively selected reduced UIM coverage in the amount of $50,000 on the business auto policy and rejected UIM coverage on the umbrella policy. Since appellant had recovered more than her employer's coverage from the tortfeasor, UIM coverage under the policies was unavailable.
 {¶ 6} Appellant sets forth the following assignment of error:
 {¶ 7} "The trial court erred to the prejudice of the plaintiffs when it granted defendant Cincinnati Insurance Company's motion for summary judgment and denied the plaintiffs' cross motion for summary judgment."
 {¶ 8} An appellate court reviews a grant of summary judgment with the same standard as the trial court. Smiddy v. The WeddingParty, Inc. (1987), 30 Ohio St.3d 35, 36. Pursuant to Civ.R. 56, a trial court is required to construe the evidence in a light most favorable to the non-moving party, determine whether any genuine issues of material fact exist, and determine whether reasonable minds could differ as to whether judgment should be entered against the non-moving party. Civ.R. 56(C). An appellate court, reviewing a grant of summary judgment, also examines the record in the light most favorable to the party opposing the motion. Engel v. Corrigan (1983), 12 Ohio App.3d 34, paragraph one of the syllabus.
 {¶ 9} "[F]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, 289. Both the business auto policy and the umbrella policy had an effective date of October 1, 1998, and were renewed on October 1, 2001. The renewal date is the date from which we determine the applicable law. Wolfe v. Wolfe (2000),88 Ohio St.3d 246, paragraph 2 of the syllabus.
 {¶ 10} R.C. 3937.18 governs what insurance companies may and may not do with respect to UIM coverage. The statute has been amended four times in the last decade, most recently by S.B. 97, effective October 31, 2001; this amendment made the offering of UIM coverage optional for insurers. The version in effect on October 1, 2001, was enacted by S.B. 267. Thus, S.B. 267 and corresponding case law govern our determination of appellant's UIM coverage under appellee's policy.
 {¶ 11} S.B. 267 required insurers to offer UIM coverage in an amount equal to and no less than the amount of liability coverage under any motor vehicle insurance policy written or delivered in Ohio. If an insurer failed to offer UIM coverage accordingly, UIM coverage arose by operation of law in the full amount available under the policy. If an insured wished to reject the offer of UIM coverage, he or she could do so. However, both the offer and the rejection of UIM coverage were required to be written. Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565, 568. In Linko v. Indemnity Ins. Co., (2000),90 Ohio St.3d 445, the Ohio Supreme Court answered certified questions detailing further requirements to be met within the written offer and rejection. These requirements were meant to ease determination of coverage, because "whether coverage was offered and rejected should be apparent from the contract itself." Linkov. Indemnity Ins. Co. (2000), 90 Ohio St.3d 445, 450. In Kemperv. Mich. Millers Ins. Co. (2002), 98 Ohio St.3d 162, the Linko
requirements were extended to policies written before S.B. 97's effective date of October 31, 2001.
 {¶ 12} Thus, an insurance contract written before October 31, 2001, must contain a written offer of UIM coverage which meets certain requirements. The written offer must "inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer."90 Ohio St.3d at 447-448. Additionally, "separately incorporated named insureds must each be listed in a rejection form in order to satisfy the offer requirement * * *." Id. at 448.
 {¶ 13} In order for a rejection of offered UIM coverage to be effective, the rejection must also be written, to ensure an "express, knowing rejection" of UIM coverage. Id. at 449, explaining Gyori, supra. Although a named insured and the insurer do not dispute the authority of the signatory to reject coverage, an insured still has standing to challenge the signatory's authority. Id. at 447. Since a rejection must be express and knowing, and since the existence of a valid offer and rejection must be apparent from the face of the contract, each separately incorporated named insured must give written authorization to its parent corporation to reject coverage on its behalf. Id. at 448. There can be no "implied, unwritten assent" of a subsidiary to its parent corporation's authority to reject UIM coverage. Id. at 450. Dispositive of this appeal is Linko's rule that "a subsidiary's authorization to a parent corporation to waive UM/UIM coverage benefits on its behalf must be in writing and must be incorporated into the contract." Id. at 450-451.
 {¶ 14} The first page of the business auto coverage policy, "Common Policy Declarations," lists SFGI as the named insured, and references a "Named Insured Endorsement." That endorsement lists SFGI and its subsidiary corporations, including STRI. On April 12, 2001, a "General Change Endorsement" amends the policy by "adding [form] AP4010H per attached." That form, titled "Important Notice to Policyholders Regarding Ohio Uninsured and Underinsured Motorist Coverage: Offer of Uninsured and Underinsured Motorist Coverage Limit and Option Selection Form," contains a brief description of the UIM coverage, lists the current limit of $1,000,000 and the premium for that coverage limit. Following that, boxes were checked which stated that the insured understands that it is selecting UIM coverage in an amount lower than the current limit, and which specifies selected UIM coverage limit of $50,000. Below an acknowledgement, SFGI is listed as the first named insured. "W. Granger Souder, Jr." signed underneath the acknowledgement. One of the acknowledgements states, "I am legally authorized to make this selection for all persons or organizations listed below and for whom I have signed."
 {¶ 15} Following form AP-401-OH is an addendum, form AP-401A-OH. It states, "This form is attached to and becomes a part of the AP-401-OH * * *." It then lists "additional named insureds and the corresponding individual who is authorized to make OHIO Uninsured and Underinsured Motorists Coverage selections under the above policy." The list includes SFGI's subsidiary corporations, including STRI, but excluding SFGI. Below each additional named insured is a signature line; each signature line was signed by "W. Granger Souder, Jr." whose title is indicated as "Counsel." Each signature is dated April 12, 2001, — the same date Souder signed form AP-401-OH for SFGI.
 {¶ 16} The commercial umbrella liability policy is similar in form. The declarations page lists SFGI and two other named insureds (which were listed as "additional" named insureds in the business auto addendum). This umbrella policy also contains a "General Change Endorsement" with reference to and incorporating form US-004-OH. This form is identical to the business auto policy form AP-401-OH, except the policy limit is $25,000,000, and the premium is commensurately higher. On this form, a checked box states, "I reject excess uninsured and underinsured motorist bodily injury coverage entirely. No premium charge will be made for excess uninsured and underinsured motorist bodily injury coverage." On this form, the only named insured is SFGI. Souder again signed below the acknowledgements, on April 12, 2001; included in the acknowledgements is the same statement of authorization for "all organizations listed below and for whom I have signed."
 {¶ 17} As with the business auto endorsement, following form US-004-OH is form US-004-A-OH, which states that it "is attached to and becomes part of the US-004-OH * * *." This form also contains a list of additional named insureds, each subsidiary corporations of SFGI, including STRI, and "the corresponding individual who is authorized to make OHIO excess uninsured and underinsured motorists coverage selections * * *." Souder again signed as the "individual authorized to sign" for each of the subsidiary corporations; he signed for STRI as "counsel."
 {¶ 18} One difference in the umbrella policy as compared to the business auto policy is form UP-001-05-97, titled "Excess Uninsured/Underinsured Motorist Coverage Offer and Option Selection Form." This states that this coverage is available only in certain states; Ohio is included. It also states "This is our offer to you of Uninsured/Underinsured Motorists coverage under this policy." A box on the form is checked, stating "I reject Excess Uninsured/Underinsured Motorists coverage under this policy." Souder signed the policy on the line marked "Named Insured"; he signed on October 1, 2001, the date the policy renewed. Most notably, he signed as "Executive V.P./Sky Financial Group."
 {¶ 19} Appellant argues that, pursuant to Linko, appellee only made an effective offer to SFGI because the offered limits of coverage and policy premiums were not presented to the other named insureds listed on the second, incorporated form. Therefore, appellant argues, appellee failed to make a valid offer of UIM coverage to STRI, and that therefore, UIM coverage for STRI arises by operation of law. We disagree with appellant's reasoning regarding the offer of UIM coverage.
 {¶ 20} The trial court premised its grant of summary judgment on the endorsements attached to both the automobile policy and the umbrella policy. The trial court correctly held that each policy contained a valid offer of UIM coverage to STRI. The separate rejection form which lists SFGI's subsidiaries complies with Linko's requirement that "[s]eparately incorporated named insureds must each be listed in a rejection form in order to satisfy the offer requirement of R.C. 3937.18 * * *." Id. at 448.
 {¶ 21} By the same token, appellant argues that appellee only secured a valid rejection of the offered coverage from SFGI, and failed to secure an effective rejection from STRI. Appellee argued in its motion for summary judgment, and before this court, that Souder's signature affirming that he is the "individual authorized to sign" is effective for all named insureds. Appellee also argues that Kemper did not invalidate R.C. 3937.19(C) as effective September 3, 1997, relative to the binding effect of a named insured's signature on any other named insureds. The trial court held, without analysis, that STRI validly reduced coverage on the business auto policy and rejected coverage on the umbrella policy.
 {¶ 22} Appellee's arguments are incorrect as a matter of law. As to its first argument, appellee ignores Linko's affirmation of Gyori insofaras any rejection of UIM coverage must be both express and knowing for all named insureds. Moreover, appellee's argument ignores Linko's requirement that each subsidiary's express, written authorization for a parent corporation to reject coverage on its behalf be incorporated into the insurance policy. This requirement of written authorization fulfills Gyori's mandate that each insured's rejection of coverage be express and knowing. Linko, 90 Ohio St.3d at 450.
 {¶ 23} Appellee's interpretation of Kemper is likewise fatally flawed. The certified question of Kemper and the Ohio Supreme Court's answer regarding Linko's effect on R.C.3937.18(C) states in total: "(1) Are the requirements of Linkov. Indemnity Ins. Co., 90 Ohio St.3d 445, 2000-Ohio-92,739 N.E.2d 338, relative to an offer of UM/UIM coverage, applicable to a policy of insurance written after enactment of [1997] HB 261 and before [2001] SB 97? * * * We answer certified question No. 1 in the affirmative * * *." 98 Ohio St.3d 162. As S.B. 97 was not effective until October 31, 2001, and the policies at issue were renewed October 1, 2001, the policies fall within Linko's purview.
 {¶ 24} Our analysis of the effect of Linko and Kemper on these facts is unaltered by a lack of evidence demonstrating whether Souder had authority to sign for STRI. The existence or non-existence of this fact is irrelevant if evidence of his authority is not properly incorporated into the insurance contract. The First District confronted identical facts inMorton et al., v. Continental Casualty Ins. Co., 1st Dist. No. C-030771, C-030799, 2004-Ohio-7126. Morton considered the effect of the Ohio Supreme Court's ruling in Hollon v. Clary,104 Ohio St.3d 526, 2004-Ohio-6772, on a rejection form signed during the purview of S.B. 267. In Hollon, the Supreme Court held that once a signed, written rejection of UIM coverage is produced, extrinsic evidence is admissible to prove that an offer of that coverage was made pursuant to Linko. Id. at ¶ 14. InMorton, a parent corporation signed a rejection of coverage for a subsidiary, and an affidavit was produced stating that the parent's signatory was authorized to accept or reject coverage for both the parent and its subsidiaries. The affidavit was extrinsic evidence not incorporated into the insurance policy. In holding that UIM coverage arose by operation of law for the subsidiary due to a lack of a written rejection by the subsidiary, the Morton court concluded, "[b]ecause the Hollon
court did not specifically address that portion of the Linko
decision that required * * * that the `subsidiary's authorization to a parent corporation to waive UM coverage benefits on its behalf must be in writing and must be incorporated into the contract,' we decline to extend the supreme court's holding inHollon to permit the admission of extrinsic evidence on that issue." 2004-Ohio-7126 at ¶ 21.
 {¶ 25} At least one appellate court has held. The court inRice v. Progressive Max Ins. Co. et al., 8th Dist. No. 83980,2004-Ohio-6107, shifted the burden to the insured to prove that the subsidiary had authority to make "insurance and risk management decisions independent of its parent company" thus rendering the parent corporation's rejection binding on its insured subsidiary. This result blatantly contradicts the axiomatic rule of law that a parent corporation and its subsidiary are two separate and distinct legal entities. Linko,90 Ohio St.3d at 449, citing North v. Higbee Co. (1936),131 Ohio St. 507. In neither Kemper nor Hollon do we find a basis for obviating application of the Linko requirement that "a subsidiary's authorization to a parent corporation to waive UM/UIM coverage benefits on its behalf must be in writing and must be incorporated into the contract." Id. at 450.
 {¶ 26} Therefore we find, pursuant to Linko, that STRI made no effective rejection of either offer of UIM coverage. STRI did not make an express, knowing rejection of UIM coverage under either policy since no written authorization for SFGI to reject coverage on its behalf is incorporated into the policies. Since there was no effective rejection of coverage by STRI, UIM coverage arises by operation of law to the full amount of coverage available under each policy. Thus, UIM coverage existed for STRI under the business auto policy and the umbrella policy from their October 1, 2001 renewal dates and hence, applies to appellant's damages resulting from the October 15, 2001 accident.
 {¶ 27} For the foregoing reasons, we reverse the trial court's grant of summary judgment to appellee. In accordance with App.R. 12(B), we remand this cause to the trial court to enter summary judgment for appellant on her declaratory judgment claim, and for determination of the remaining claims and counterclaim. Costs to appellee. App.R. 24.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Skow, J. Concur.
Dennis M. Parish, J., dissents.